**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUL **1 0** 2020

JAMES W. McCORMACK, CLERK
By: _____
PLAINTIFF                    DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
~~LITTLE ROCK~~ DIVISION
*Central*

LARRY HITCHCOCK

VS.                              NO. 4:20-CV-825-BRW

THE LINCOLN NATIONAL LIFE
INSURANCE COMPANY                              DEFENDANT

## **COMPLAINT**

COMES NOW Plaintiff, Larry Hitchcock, by and through his attorney, Daniel A. Webb, and for his complaint states:

### **PARTIES AND JURISDICTION**

1.     Plaintiff is a resident of Cleburne County, Arkansas, who while working for Nabholz Incorporated participated in an employer provided insurance plan for long term disability benefits (the "Plan"). The Plan was underwritten and administered by The Lincoln National Life Insurance Company ("Defendant"). The Defendant is a foreign insurance company authorized to do business in Arkansas. See Plan attached as Exhibit A.

2.     This is an action to recover benefits pursuant to section 502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA").

3.     This Court has federal question subject matter jurisdiction and personal jurisdiction over the parties and is the proper venue pursuant to 28 U.S.C. § 1391(b).

This case assigned to District Judge ___Wilson___
and to Magistrate Judge ___Kearney___

## FACTS

4.      While employed by Nabholz Incorporated Plaintiff participated in the Plan.    While a Plan participant Plaintiff developed serious health conditions including but not limited to the following: coronary artery disease with history of myocardial infarction, diabetes mellitus, hypertension, sleep apnea, diverticulosis, vasovagal syncope and COPD.  Plaintiff's conditions have rendered him totally and permanently disabled, and he suffers from severe physical limitations such that he is unable to perform even sedentary work on any sort of sustained basis. Defendant approved Plaintiff's claim for benefits for the period from 1/13/2017 to 1/13/2019 but has incorrectly denied all other benefits.  See final administrative denial letter dated May 6, 2020 attached as Exhibit B.

5.      Despite Plaintiff's severe medical problems and his cooperation in providing Defendant with medical documentation, Defendant without legal justification refuses to pay Plaintiff the long-term disability benefits he is owed.

6.      Plaintiff has complied with all conditions precedent to entitle him to benefits, and Plaintiff received his final administrative denial on or about May 6, 2020.

7.      Plaintiff applied for Social Security disability benefits and was approved for benefits beginning 01/01/2018; accordingly, an offset for benefits payable by the Plan may apply.  See medical approval letter from SSA dated 10/26/2018 attached as Exhibit C.

8.      Defendant underwrote the Plan and is the fiduciary responsible for approving or denying claims and paying them if approved. Accordingly, Defendant maintains a conflict of interest in the present situation.

9.      Plaintiff has been forced to retain the services of counsel in order to bring this action, and Defendant is obligated to pay attorney fees in addition to the unpaid benefits owed Plaintiff.

10.     It is appropriate under these circumstances to award Plaintiff pre-judgment interest in addition to awarding him back benefits and future benefits under the Plan.

11.     The Plan is governed by Arkansas law and Arkansas Insurance Commission Rule 101 is applicable in the present case.

WHEREFORE, Plaintiff prays for an order awarding him: all unpaid back benefits, future benefits, pre-judgment interest, interest, attorney's fees, costs and all other appropriate and proper relief.

Respectfully submitted,

DANIEL A. WEBB, Ark. Bar No. 2000113
111 Center Street, Suite 1200
Little Rock, Arkansas 72201
(501) 372-2400
dwebblaw@att.net



Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life**
**Insurance Company**
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.LFG.com

December 12, 2013

> **EXHIBIT**
> tabbies
> _A___

Wanda Simmons
Nabholz Incorporated
612 Garland Street
Conway, AR   72032

Re:     Policy No.  000010073771 – Long Term Disability
        Group I.D.  NABHOLZ

Dear Wanda Simmons:

Enclosed you will find Amendment No. 4 and a revised policy.  As requested, we have amended the above referenced policy to reflect a Waiting Period of "six months" with the Effective Date for the Employee's coverage to be "the first of the month following or coinciding the date the Employee becomes eligible for the coverage".  This amendment is effective January 1, 2014.

Revised certificates are located on The Lincoln National Life Insurance Company website, www.lincoln4benefits.com.  A supply of printed certificates can be requested from Client Services at the telephone number or email address below.

It is very important that we receive a signed copy of the amendment for our records.  Please fax the signed copy to (877) 573-6177.  **If we do not hear from you within 30 days, payment of the required premium will be considered acceptance of the amendment as issued.**

If you have any questions on this change, please feel free to contact your broker or Customer Service Professional at (800) 423-2765, Option 2; or via email at ClientServices@LFG.com.  Thank you for giving The Lincoln National Life Insurance Company an opportunity to serve you.

Sincerely,

The Lincoln National Life Insurance Company

Enclosures

## AMENDMENT NO. 4

TO BE ATTACHED TO AND MADE PART OF GROUP POLICY NO.:  000010073771

ISSUED TO:  Nabholz Incorporated

It is agreed that the above policy be replaced with the attached Policy, which is revised and dated January 1, 2014.

The effective date of this amendment is January 1, 2014; but only with respect to disabilities incurred on or after that date.  Nothing contained in this amendment shall change any of the terms and conditions of this Policy; except as stated above.

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**

_____
Officer of the Company

Accepted by the Group Policyholder this _____ day of _____ 20_____

By _____ Title _____

GL1100 AMEND.

# The Lincoln National Life Insurance Company

A Stock Company     Home Office Location:  Fort Wayne, Indiana
Group Insurance Service Office:  8801 Indian Hills Drive, Omaha, NE 68114-4066 (402) 361-7300

In Consideration of the Application for this Policy made by

Nabholz Incorporated

(herein called the Policyholder)

and the payment of all premiums when due, The Lincoln National Life Insurance Company agrees to make the payments provided in this Policy to the person or persons entitled to them.

Policy No.   000010073771         Policy Effective Date:    October 1, 2005

Monthly Premium:  .75% of Total Covered Payroll per Month

Policy Anniversaries will be annual beginning on:  January 1, 2015

The first premium is due on this Policy's Effective Date, and subsequent premiums are due on November 1, 2005, and on the same day of each month thereafter.

This Policy is delivered in the state of Arkansas and subject to the laws of that jurisdiction.

The Lincoln National Life Insurance Company has executed this Policy at its Group Insurance Service Office in Omaha, Nebraska this 12th day of December, 2013.

SECRETARY                                              PRESIDENT

## GROUP LONG-TERM DISABILITY INSURANCE POLICY

# TABLE OF CONTENTS

Schedule of Benefits.................................................................3

Definitions .......................................................................4

General Provisions ...............................................................10

Claims Procedures ..............................................................12

Eligibility .........................................................................16

Effective Dates..................................................................16

Individual Termination .........................................................18

Policy Termination..............................................................19

Premiums and Premium Rates ................................................20

Total Disability Monthly Benefit .............................................21

Progressive Income Benefit....................................................22

Partial Disability Monthly Benefit............................................24

Other Income Benefits..........................................................26

Recurrent Disability.............................................................29

Exclusions .......................................................................30

Specified Injuries or Sicknesses Limitation..................................31

Mandatory Vocational Rehabilitation Benefit Provision.....................33

Reasonable Accommodation Benefit ..........................................34

Prior Insurance Credit Upon Transfer of Insurance Carriers...............35

Family Income Benefit .........................................................36

Recovery Benefit For Commissioned Employees............................37

Notice .............................................................................38

GL3001-LTD-2

01/01/14

Nabholz Incorporated
000010073771

## SCHEDULE OF BENEFITS

PARTICIPATING EMPLOYERS:   NABCO M & E
                          Nabholz, Inc.

ELIGIBLE CLASS means:  Class 1      Executives

MINIMUM HOURS PER WEEK:  30

## LONG-TERM DISABILITY BENEFITS

BENEFIT PERCENTAGE:   66 2/3%

MAXIMUM MONTHLY BENEFIT:   $15,000

MINIMUM MONTHLY BENEFIT:    $50

Long-Term Disability Benefits for PRE-EXISTING CONDITIONS will be subject to the Pre-Existing Condition Exclusion on the Exclusion page.

ELIMINATION PERIOD:  90 calendar days of Disability caused by the same or a related Sickness or Injury, which must be accumulated within a 180 calendar day period.

**MAXIMUM BENEFIT PERIOD:** (For Sickness, Injury, or Pre-Existing Conditions):   The Insured Employee's Social Security Normal Retirement Age, or the Maximum Benefit Period shown below (whichever is later).

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than Age 60 | To Age 65 |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 and Over | 12 months |

OWN OCCUPATION PERIOD means a period beginning at the end of the Elimination Period and ending at the end of the Maximum Benefit Period for Insured Employees.

WAITING PERIOD:      Six months of continuous Active Work   (For date insurance begins, refer to "Effective Dates" section)

CONTRIBUTIONS:      Insured employees are required to contribute to the cost of the Long-Term Disability coverage.

GL3001-LTD-SB

01/01/14

Nabholz Incorporated
000010073771

## SCHEDULE OF BENEFITS

PARTICIPATING EMPLOYERS:  NABCO M & E
Nabholz, Inc.

ELIGIBLE CLASS means:  Class 2    All Full-Time Employees of Nabholz, Inc.

MINIMUM HOURS PER WEEK:  30

## LONG-TERM DISABILITY BENEFITS

BENEFIT PERCENTAGE:   60%

MAXIMUM MONTHLY BENEFIT:    $8,000

MINIMUM MONTHLY BENEFIT:    $50

Long-Term Disability Benefits for PRE-EXISTING CONDITIONS will be subject to the Pre-Existing Condition Exclusion on the Exclusion page.

ELIMINATION PERIOD:  90 calendar days of Disability caused by the same or a related Sickness or Injury, which must be accumulated within a 180 calendar day period.

**MAXIMUM BENEFIT PERIOD:** (For Sickness, Injury, or Pre-Existing Conditions):    The Insured Employee's Social Security Normal Retirement Age, or the Maximum Benefit Period shown below (whichever is later).

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than Age 60 | To Age 65 |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 and Over | 12 months |

OWN OCCUPATION PERIOD means a period beginning at the end of the Elimination Period and ending 24 months later for Insured Employees.

WAITING PERIOD:      Six months of continuous Active Work   (For date insurance begins, refer to "Effective Dates" section)

CONTRIBUTIONS:      Insured employees are required to contribute to the cost of the Long-Term Disability coverage.

GL3001-LTD-SB

01/01/14

Nabholz Incorporated
000010073771

## SCHEDULE OF BENEFITS

PARTICIPATING EMPLOYERS:  NABCO M & E
                                   Nabholz, Inc.

ELIGIBLE CLASS means:  Class 3      All Full-Time Employees of NABCO M & E

MINIMUM HOURS PER WEEK:  30

## LONG-TERM DISABILITY BENEFITS

BENEFIT PERCENTAGE:   60%

MAXIMUM MONTHLY BENEFIT:    $8,000

MINIMUM MONTHLY BENEFIT:    $50

Long-Term Disability Benefits for PRE-EXISTING CONDITIONS will be subject to the Pre-Existing Condition Exclusion on the Exclusion page.

ELIMINATION PERIOD:  90 calendar days of Disability caused by the same or a related Sickness or Injury, which must be accumulated within a 180 calendar day period.

**MAXIMUM BENEFIT PERIOD:** (For Sickness, Injury, or Pre-Existing Conditions):   The Insured Employee's Social Security Normal Retirement Age, or the Maximum Benefit Period shown below (whichever is later).

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than Age 60 | To Age 65 |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 and Over | 12 months |

OWN OCCUPATION PERIOD means a period beginning at the end of the Elimination Period and ending 24 months later for Insured Employees.

WAITING PERIOD:    Six months of continuous Active Work   (For date insurance begins, refer to "Effective Dates" section)

CONTRIBUTIONS:    Insured employees are required to contribute to the cost of the Long-Term Disability coverage.

GL3001-LTD-SB

01/01/14

Nabholz Incorporated
000010073771

## SCHEDULE OF BENEFITS

PARTICIPATING EMPLOYERS:  NABCO M & E
Nabholz, Inc.

ELIGIBLE CLASS means:  Class 4      All Full-Time Employees of Nabholz Construction

MINIMUM HOURS PER WEEK:  30

## LONG-TERM DISABILITY BENEFITS

BENEFIT PERCENTAGE:   60%

MAXIMUM MONTHLY BENEFIT:   $8,000

MINIMUM MONTHLY BENEFIT:    $50

Long-Term Disability Benefits for PRE-EXISTING CONDITIONS will be subject to the Pre-Existing Condition Exclusion on the Exclusion page.

ELIMINATION PERIOD:  90 calendar days of Disability caused by the same or a related Sickness or Injury, which must be accumulated within a 180 calendar day period.

**MAXIMUM BENEFIT PERIOD:** (For Sickness, Injury, or Pre-Existing Conditions):   The Insured Employee's Social Security Normal Retirement Age, or the Maximum Benefit Period shown below (whichever is later).

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than Age 60 | To Age 65 |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 and Over | 12 months |

OWN OCCUPATION PERIOD means a period beginning at the end of the Elimination Period and ending 24 months later for Insured Employees.

WAITING PERIOD:     Six months of continuous Active Work   (For date insurance begins, refer to "Effective Dates" section)

CONTRIBUTIONS:     Insured employees are required to contribute to the cost of the Long-Term Disability coverage.

GL3001-LTD-SB

01/01/14

## DEFINITIONS

**As used throughout this Policy, the following terms shall have the meanings indicated below.  Other parts of this Policy contain definitions specific to those provisions.**

**ACTIVE WORK** or **ACTIVELY AT WORK** means an Employee's full-time performance of all Main Duties of his or her Own Occupation, for the regularly scheduled number of hours, at:
1. the Employer's usual place of business; or
2. any other business location where the Employer requires the Employee to travel.

Unless disabled on the prior workday or on the day of absence, an Employee will be considered Actively at Work on the following days:
1. a Saturday, Sunday or holiday that is not a scheduled workday;
2. a paid vacation day or other scheduled or unscheduled non-workday; or
3. a non-medical leave of absence of 12 weeks or less, whether taken with the Employer's prior approval or on an emergency basis.

This includes a Military Leave or an approved Family or Medical Leave that is **not** due to the Employee's own health condition.

**ANNUAL SALARY** means the Insured Employee's **BASIC MONTHLY EARNINGS** or **PREDISABILITY INCOME** multiplied by 12.

**BASIC MONTHLY EARNINGS** or **PREDISABILITY INCOME** means the Insured Employee's average monthly base salary or hourly pay from the Employer before taxes on the Determination Date.  The "Determination Date" is the last day worked just prior to the date the Disability begins.

It also includes:
1. paid commissions averaged over the 12 months just prior to the Determination Date; or over the actual period of employment with the Employer just prior to that date, if shorter.

It does **not** include bonuses, overtime pay, or any other extra compensation.  It does not include income from a source other than the Employer.  It will not exceed the amount shown in the Employer's financial records, the amount for which premium has been paid, or the Maximum Covered Monthly Earnings permitted by this Policy; whichever is less.  (Maximum Covered Monthly Earnings equals the Maximum Monthly Benefit divided by the Benefit Percentage shown in the Schedule of Benefits.)  Exception:  For purposes of determining the Partial Disability Monthly Benefit, Basic Monthly Earnings will not exceed the amount shown in the Employer's financial records.

## DEFINITIONS
### (continued)

**COMPANY** means The Lincoln National Life Insurance Company, an Indiana corporation.  Its Group Insurance Service Office address is 8801 Indian Hills Drive, Omaha, Nebraska 68114-4066.

**DAY** or **DATE** means the period of time that begins at 12:01 a.m. and ends at 12:00 midnight, standard time, at the Policyholder's place of business.  When used with regard to effective dates, it means 12:01 a.m.  When used with regard to termination dates, it means 12:00 midnight.

**DISABILITY** or **DISABLED** means Total Disability or Partial Disability.

**DISABILITY BENEFIT,** when used with the term Retirement Plan, means a benefit that:
1.  is payable under a Retirement Plan due to disability as defined in that plan; and
2.  does not reduce the benefits that would have been paid as Retirement Benefits at the normal retirement age under the plan if the disability had not occurred.

If the payment of the benefit does cause such a reduction, the benefit will be deemed a Retirement Benefit as defined in this Policy.

**ELIMINATION PERIOD** means the number of days of Disability during which no benefit is payable.  The Elimination Period is shown in the Schedule of Benefits.  It applies as follows.
1.  The Elimination Period:
    a.  begins on the first day of Disability; and
    b.  is satisfied when the required number of days is accumulated within a period which does not exceed two times the Elimination Period.
    
    During a period of Disability, the Insured Employee may return to full-time work, at his or her own or any other occupation, for an accumulated number of days not to exceed the Elimination Period.
2.  Only days of Disability caused by the same or a related Sickness or Injury will count towards the Elimination Period.  Days on which the Insured Employee returns to full-time work will not count towards the Elimination Period.

**EMPLOYEE** or **FULL-TIME EMPLOYEE** means a person:
1.  whose employment with the Employer is the person's main occupation;
2.  whose employment is for regular wage or salary;
3.  who is regularly scheduled to work at such occupation at least the Minimum Hours Per Week shown in the Schedule of Benefits;
4.  who is a member of an Eligible Class which is eligible for coverage under this Policy;
5.  who is not a temporary or seasonal employee; and
6.  who is a citizen of the United States or legally works in the United States.

**EMPLOYER** means the Policyholder.  It includes any division, subsidiary or affiliated company named in the Application or Participation Agreement.

**EVIDENCE OF INSURABILITY** means a statement of proof of an Employee's medical history.  The Company uses this to determine his or her acceptance for insurance or an increased amount of insurance.  Such proof will be provided at the Employee's own expense.

GL3001-LTD-3 10

01/01/14

## DEFINITIONS
### (continued)

**FAMILY OR MEDICAL LEAVE** means an approved leave of absence that:
1. is subject to the federal FMLA law (the Family and Medical Leave Act of 1993 and any amendments to it) or a similar state law;
2. is taken in accord with the Employer's leave policy and the law which applies; and
3. does not exceed the period approved by the Employer and required by that law.

Under the federal FMLA law, such leaves are permitted for up to 12 weeks in a 12-month period, as defined by the Employer. The 12 weeks:
1. may consist of consecutive or intermittent work days; or
2. may be granted on a part-time equivalency basis.

If an Employee is entitled to a leave under both the federal FMLA law and a similar state law, he or she may elect the more favorable leave (but not both). If an Employee is on an FMLA leave due to his or her own health condition on the date Policy coverage takes effect, he or she is not considered Actively at Work.

**FULL-TIME**, as it applies to the Partial Disability Monthly Benefit, means the average number of hours the Insured Employee was regularly scheduled to work, at his or her Own Occupation, during the month just prior to:
1. the date the Elimination Period begins; or
2. the date an approved leave of absence begins, if the Elimination Period begins while the Insured Employee is continuing coverage during a leave of absence.

In no event will it exceed 40 hours per week.

**GAINFUL OCCUPATION** means any occupation in which the Insured Employee:
1. is or could reasonably become qualified, considering his or her education, training, experience, mental and physical abilities;
2. could reasonably find employment, considering the demand in the national labor force; and
3. could earn (or reasonably expect to earn) a before-tax income at least equal to 60% of his or her Predisability Income, within 12 months of returning to work.

**INJURY** means an accidental bodily Injury that:
1. requires treatment by a Physician; and
2. directly, and independently of all other causes, results in a Disability that begins while the Insured Employee is insured under this Policy.

**INSURANCE MONTH** or **POLICY MONTH** means that period of time:
1. beginning at 12:01 a.m. Standard Time, at the Policyholder's place of business on the first day of any calendar month; and
2. ending at 12:00 midnight on the last day of the same calendar month.

**INSURED EMPLOYEE** means an Employee for whom Policy coverage is in effect.

**MAIN DUTIES** or **MATERIAL AND SUBSTANTIAL DUTIES** means those job tasks that:
1. are normally required to perform the Insured Employee's Own Occupation; and
2. could not reasonably be modified or omitted.

To determine whether a job task could reasonably be modified or omitted, the Company will apply the Americans with Disabilities Act's standards concerning reasonable accommodation. It will apply the Act's standards, whether or not:
1. the Employer is subject to the Act; or
2. the Insured Employee has requested such a job accommodation.

An Employer's failure to modify or omit other job tasks does **not** render the Insured Employee unable to perform the Main Duties of the job.

## DEFINITIONS
### (continued)

Main Duties include those job tasks:
1. as described in the U.S. Department of Labor Dictionary of Occupational Titles; and
2. as performed in the general labor market and national economy.

Main Duties are **not** limited to those specific job tasks as performed for a certain firm or at a certain work site.

**MEDICALLY APPROPRIATE TREATMENT** means diagnostic services, consultation, care or services that are consistent with the symptoms or diagnosis causing the Insured Employee's Disability. Such treatment must be rendered:
1. by a Physician whose license and any specialty are consistent with the disabling condition; and
2. according to generally accepted, professionally recognized standards of medical practice.

**MILITARY LEAVE** means a leave of absence that:
1. is subject to the federal USERRA law (the Uniformed Services Employment and Reemployment Rights Act of 1994 and any amendments to it);
2. is taken in accord with the Employer's leave policy and the federal USERRA law; and
3. does not exceed the period required by that law.

**MONTHLY BENEFIT** means the amount payable monthly by the Company to the Insured Employee who is Totally Disabled or Partially Disabled.

**OWN OCCUPATION or REGULAR OCCUPATION** means the occupation, trade or profession:
1. in which the Insured Employee was employed with the Employer prior to Disability; and
2. which was his or her main source of earned income prior to Disability.

It means a collective description of related jobs, as defined by the U.S. Department of Labor Dictionary of Occupational Titles. It includes any work in the same occupation for pay or profit, regardless of:
1. whether such work is with the Employer, with some other firm, or on a self-employed basis; or
2. whether a suitable opening is currently available with the Employer or in the local labor market.

**OWN OCCUPATION PERIOD** means a period as shown in the Schedule of Benefits.

## DEFINITIONS
### (continued)

**PARTIAL DISABILITY** or **PARTIALLY DISABLED** will be defined as follows:
1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee:
   a. is unable to perform one or more of the Main Duties of his or her Own Occupation; or is unable to perform such duties full-time; and
   b. is engaged in Partial Disability Employment.
2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee:
   a. is unable to perform one or more of the Main Duties of any Gainful Occupation; or is unable to perform such duties full-time; and
   b. is engaged in Partial Disability Employment.

**PARTIAL DISABILITY EMPLOYMENT** means the Insured Employee is working at his or her Own Occupation or any other occupation; however, because of a Partial Disability:
1. the Insured Employee's hours or production is reduced;
2. one or more Main Duties of the job are reassigned; or
3. the Insured Employee is working in a lower-paid occupation.

During Partial Disability Employment, his or her current earnings:
1. must be at least 20% of Predisability Income; and
2. may not exceed the percentage specified in the Partial Disability Benefit section.

**PHYSICIAN** means:
1. a legally qualified medical doctor who is licensed to practice medicine, to prescribe and administer drugs, or to perform surgery; or
2. any other duly licensed medical practitioner who is deemed by state law to be the same as a legally qualified medical doctor.

The medical doctor or other medical practitioner must be acting within the scope of his or her license. He or she must be qualified to provide Medically Appropriate Treatment for the Insured Employee's disabling condition.

Physician does **not** include the Insured Employee or a relative of the Insured Employee receiving treatment. Relatives include:
1. the Insured Employee's spouse, siblings, parents, children and grandparents; and
2. his or her spouse's relatives of like degree.

**POLICY** means this group insurance Policy issued by the Company to the Policyholder.

**POLICYHOLDER** means the person, company, trust or other organization as shown on the Face Page of this Policy.

**PREDISABILITY INCOME**—See Basic Monthly Earnings definition.

**REGULAR CARE OF A PHYSICIAN** or **REGULAR ATTENDANCE OF A PHYSICIAN** means the Insured Employee:
1. personally visits a Physician, as often as medically required according to standard medical practice to effectively manage and treat his or her disabling condition; and
2. receives Medically Appropriate Treatment, by a Physician whose license and any specialty are consistent with the disabling condition.

**REGULAR OCCUPATION**—See Own Occupation or Regular Occupation definition.

GL3001-LTD-3 10

01/01/14

## DEFINITIONS
### (continued)

**RETIREMENT BENEFIT,** when used with the term Retirement Plan, means a benefit that:
1. is payable under a Retirement Plan either in a lump sum or in the form of periodic payments;
2. does not represent contributions made by an Insured Employee (Payments representing Employee contributions are deemed to be received over the Insured Employee's expected remaining life, regardless of when they are actually received.); and
3. is payable upon:
   a. early or normal retirement; or
   b. disability (if the payment does reduce the benefit which would have been paid at the normal retirement age under the plan, if disability had not occurred).

**RETIREMENT PLAN** means a defined benefit or defined contribution plan that:
1. provides Retirement Benefits to Employees; and
2. is not funded wholly by Employee contributions.

The term shall **not** include any 401(k), profit-sharing or thrift plan; informal salary continuance plan; individual retirement account (IRA); tax sheltered annuity (TSA); stock ownership plan; or a non-qualified plan of deferred compensation.

An Employer's Retirement Plan is deemed to include any Retirement Plan:
1. which is part of any federal, state, county, municipal or association retirement system; and
2. for which the Insured Employee is eligible as a result of employment with the Employer.

**SICK LEAVE** or **SALARY CONTINUANCE PLAN** means a plan that:
1. is established and maintained by the Employer for the benefit of Employees; and
2. continues payment of all or part of an Insured Employee's Predisability Income for a specified period after he or she becomes Disabled.
It does **not** include compensation the Employer pays an Insured Employee for work actually performed during a Disability.

**SICKNESS** means illness, pregnancy or disease.

**TOTAL COVERED PAYROLL** means the total amount of Basic Monthly Earnings for all Employees insured under this Policy.

**TOTAL DISABILITY** or **TOTALLY DISABLED** will be defined as follows:
1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any Gainful Occupation.
The loss of a professional license, an occupational license or certification, or a driver's license for any reason does **not**, by itself, constitute Total Disability.

**WAITING PERIOD** means the period of time an Employee must be employed in an eligible class with the Employer, before he or she becomes eligible to enroll for coverage under this Policy. The period of service must be continuous, except as explained in the Eligibility provision captioned Prior Service Credit Towards Waiting Period.

## GENERAL PROVISIONS

**ENTIRE CONTRACT.** The entire contract between the parties shall consist of:
1.   this Policy and any amendments to it;
2.   the Policyholder's application (a copy of which is attached);
3.   any Participating Employers' applications or Participation Agreements; and
4.   any individual applications of the Insured Employees.

In the absence of fraud, all statements made by the Policyholder and by Insured Employees are representations and not warranties. No statement made by an Insured Employee will be used to contest the coverage provided by this Policy, unless:
1.   it is contained in a written statement signed by that Insured Employee; and
2.   a copy of the statement has been furnished to that Insured Employee.

**AUTHORITY TO MAKE OR AMEND CONTRACT.** Only a Company Officer located in the Company's Group Insurance Service Office has the authority to:
1.   determine the insurability of a group or any individual within a group;
2.   make a contract in the Company's name;
3.   amend or waive any provision of this Policy; or
4.   extend the time for payment of any premium.

No change in this Policy will be valid, unless it is made in writing and signed by such a Company Officer.

**INCONTESTABILITY.** Except for the non-payment of premiums or fraud, the Company may not contest the validity of this Policy after it has been in force for two years from its date of issue; and as to any Insured Employee, after his or her coverage has been in force for two years during his or her lifetime. This clause does not preclude, at any time, the assertion of defenses based upon:
1.   this Policy's eligibility requirements, exclusions and limitations; and
2.   other Policy provisions unrelated to the validity of coverage.

**RESCISSION.** The Company has the right to rescind any insurance for which Evidence of Insurability was required, if:
1.   an Insured Employee incurs a claim during the first two years of coverage; and
2.   the Company discovers that the Insured Employee made a Material Misrepresentation on his or her application.

A **"Material Misrepresentation"** is an incomplete or untrue statement that caused the Company to issue coverage that it would have disapproved, had it known the truth. **"To rescind"** means to cancel insurance back to its effective date. In that event, the Company will refund all premium paid for the rescinded insurance, less any benefits paid for the Insured Employee's claims. The Company reserves the right to recover any claims paid in excess of such premiums.

**NON-PARTICIPATION.** This is a non-participating Policy. It will not share in the divisible surplus of the Company.

**INFORMATION TO BE FURNISHED.** The Employer is required to furnish the Company any information needed to administer this Policy, including:
1.   information about Employees:
     a.   who become eligible for insurance;
     b.   whose amounts of coverage change; or
     c.   whose eligibility or coverage ends;
2.   occupational information and other facts that may be needed to manage a claim; and
3.   any other information that the Company may reasonably require.

The Company may inspect any of the Employer's records that relate to this Policy, at any reasonable time.

Clerical error by the Employer:
1.   will not void or terminate insurance that otherwise would be in effect;
2.   will not result in insurance coverage that otherwise would not be in effect; and
3.   will not continue insurance that otherwise would be terminated.

Once an error is discovered, a fair adjustment in premium will be made. If a premium adjustment involves the return of unearned premium, the amount of the return will be limited to the 12-month period that precedes the date the Company receives proof that such an adjustment should be made.

GL3001-LTD-7 04

01/01/14

## GENERAL PROVISIONS
### (continued)

**MISSTATEMENTS OF FACTS**.  If relevant facts about any person were misstated:
1.   a fair adjustment of the premium will be made; and
2.   the true facts will decide if and in what amount insurance is valid under this Policy.
If an Insured Employee's age has been misstated, any benefits shall be in the amount the paid premium would have purchased at the correct age.

**ACTS OF THE POLICYHOLDER**.  In administering this Policy, the Policyholder must:
1.   treat Employees the same in like situations; and
2.   allow the Company, without inquiry, to rely on its acts.

**POLICYHOLDER'S AGENCY**.  For all purposes of this Policy, the Policyholder acts on its own behalf or as the Employee's agent.  Under no circumstances will the Policyholder be deemed the Company's agent.

**CERTIFICATES**.  The Employer will be furnished with individual Certificates for delivery to each Insured Employee.  These Certificates summarize the benefits provided by this Policy.  If there is a conflict between this Policy and the Certificate, this Policy will control.

**CONFORMITY WITH STATE STATUTES**.  If, on its effective date, any provision of this Policy conflicts with any applicable law, the provision will be deemed to conform to the minimum requirements of the law.

**CURRENCY**.  In administering this Policy:
1.   all Predisability Income will be expressed in U.S. dollars; and
2.   all premium and benefit amounts must be paid in U.S. dollars.

**WORKERS' COMPENSATION OR STATE DISABILITY INSURANCE**.  This Policy does not replace or provide benefits required by:
1.   Workers' Compensation laws; or
2.   any state disability insurance plan laws.

**ASSIGNMENT**.  The rights and benefits under this Policy may not be assigned.

## CLAIMS PROCEDURES

**NOTICE OF CLAIM**.  Written notice of claim must be given during the Elimination Period.  The notice must be sent to the Company's Group Insurance Service Office.  It should include:
1.  the Insured Employee's name and address; and
2.  the number of this Policy.

If this is not possible, written notice must be given as soon as it is reasonably possible.

**CLAIM FORMS**.  When notice of claim is received, the Company will send claim forms to the Insured Employee.  If the Company does not send the forms within 15 days, the Insured Employee may send the Company written proof of Disability in a letter.  It should state the date the Disability began, its cause and degree.  The Company will periodically send the Insured Employee additional claim forms.

**PROOF OF CLAIM**.  The Company must be given written proof of claim within 90 days after the end of the Elimination Period.  When it is not reasonably possible to give written proof in the time required, the claim will not be reduced or denied solely for this reason, if the proof is filed:
1.  as soon as reasonably possible; and
2.  in no event later than one year after it was required.

These time limits will not apply while an Insured Employee lacks legal capacity.

Proof of claim must be provided at the Insured Employee's own expense.  It must show the date the Disability began, its cause and degree.  Documentation must include:
1.  completed statements by the Insured Employee and the Employer;
2.  a completed statement by the attending Physician, which must describe any restrictions on the Insured Employee's performance of the duties of his or her Regular Occupation;
3.  proof of any other income received;
4.  proof of any benefits available from other income sources, which may affect Policy benefits;
5.  a signed authorization for the Company to obtain more information; and
6.  any other items the Company may reasonably require in support of the claim.

Proof of continued Disability, Regular Care of a Physician, and any Other Income Benefits affecting the claim must be given to the Company.  This must be supplied within 45 days after the Company requests it.  If it is not, benefits may be denied or suspended.

**EXAMINATION.**  The Company may have the Insured Employee examined:
1.  by a Physician, specialist or vocational rehabilitation expert of the Company's choice;
2.  as often as reasonably required while a claim or appeal is pending.

Any such exam will be at the Company's expense.

The Company may determine that (in its opinion) the Insured Employee has:
1.  failed to cooperate with an examiner;
2.  failed to take an exam scheduled by the Company; or
3.  postponed such an exam more than twice.

In that event, benefits may be denied or suspended, until the required exam is completed.

**TIME OF PAYMENT OF CLAIMS.**  Benefits payable under this Policy will be paid immediately after the Company receives complete proof of claim and confirms liability.  After that:
1.  Any benefits will be paid monthly, during any period for which the Company is liable.  If benefits are due for less than a month, they will be paid on a pro rata basis.  The daily rate will equal 1/30 of the Monthly Benefit.
2.  Any balance, which remains unpaid at the end of the period of liability, will be paid immediately after the Company receives complete proof of claim and confirms liability.

GL3001-LTD-8 04 AR

01/01/14

## CLAIMS PROCEDURES
### (continued)

**TO WHOM PAYABLE.** All benefits are payable to the Insured Employee, while living. After his or her death, benefits will be payable as follows.
1.   Any Survivor Benefit will be payable in accord with that section.
2.   Any other benefits will be payable to the Insured Employee's estate.

If a benefit becomes payable to:
1.   the Insured Employee's estate; or
2.   a minor or any other person who is not legally competent to give a valid receipt;
then up to $1,000 may be paid to any relative of the Insured Employee that the Company finds entitled to payment. If payment is made in good faith to such a relative, the Company will not have to pay that benefit again.

**NOTICE OF CLAIM DECISION.** The Company will send the Insured Employee a written notice of its claim decision. If the Company denies any part of the claim, the written notice will explain:
1.   the reason for the denial, under the terms of this Policy and any internal guidelines;
2.   how the Insured Employee may request a review of the Company's decision; and
3.   whether more information is needed to support the claim.
This notice will be sent within 15 days after the Company resolves the claim. It will be sent within 45 days after the Company receives the first proof of claim, if reasonably possible.

**Delay Notice.** The Company may need more than 15 days to process the claim, due to matters beyond its control. If so, an extension will be permitted. In that event, the Company will send the Insured Employee a written delay notice:
1.   by the 15th day after receiving the first proof of claim; and
2.   every 30 days after that, until the claim is resolved.

The notice will explain:
1.   what additional information is needed to determine liability; and
2.   when a decision can be expected.
If the Insured Employee does not receive a written decision by the 105th day after the Company receives the first proof of claim, there is a right to an immediate review, as if the claim was denied.

**Exception:** The Company may need more information from the Insured Employee to process a claim. If so, it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for claim processing.

**REVIEW PROCEDURE.** Within 180 days after receiving a denial notice, the Insured Employee may request a claim review by sending the Company:
1.   a written request; and
2.   any written comments or other items to support the claim.
The Insured Employee may review certain non-privileged information relating to the request for review.

The Company will review the claim and send the Insured Employee a written notice of its decision. The notice will state the reasons for the Company's decision, under the terms of this Policy and any internal guidelines. If the Company upholds the denial of all or part of the claim, the notice will also describe:
1.   any further appeal procedures available under this Policy;
2.   the right to access relevant claim information; and
3.   the right to request a state insurance department review, or to bring legal action.
This notice will be sent within 45 days after the Company receives the request for review, or within 90 days if a special case requires more time.

GL3001-LTD-8 04 AR

01/01/14

## CLAIMS PROCEDURES
### (continued)

**Delay Notice.**  If the Company needs more than 45 days to process an appeal, in a special case:
1. an extension of up to 45 more days will be permitted; and
2. the Company will send the Insured Employee a written delay notice, by the 30th day after receiving the request for review.

The notice will explain:
1. the special circumstances which require the delay;
2. whether more information is needed to review the claim; and
3. when a decision can be expected.

**Exception:**  The Company may need more information from the Insured Employee to process an appeal.  If so, it must be supplied within 45 days after the Company requests it.  The resulting delay will not count towards the above time limits for appeal processing.

**Claims Subject to ERISA** (Employee Retirement Income Security Act of 1974).  Before bringing a civil legal action under the federal labor law known as ERISA, an employee benefit plan participant or beneficiary must exhaust available administrative remedies.  Under this Policy, the plan participant or beneficiary must first seek two administrative reviews of the adverse claim decision, in accord with this section.  After the required reviews:
1. an ERISA plan participant or beneficiary may bring legal action under Section 502(a) of ERISA; and
2. the Company will waive any right to assert that he or she failed to exhaust administrative remedies.

**SUBROGATION.**  The Company shall have the right to recover any Policy benefits paid for a Disability:
1. which is caused by a third party's wrongful act or negligence; and
2. for which the Insured Employee recovers from the third party or the third party's insurer.
The third party may be another person or an organization.

If a Disability appears to be someone else's fault or liability, Policy benefits will be paid for that Disability only if the Insured Employee agrees:
1. to repay the Company for such benefits, to the extent that they are for the loss for which the Insured Employee recovers damages from the third party;
2. to allow the Company a lien on such damages and to hold them in trust for the Company; and
3. to execute any legal instruments the Company needs to secure the above rights.

If the Company pays such Policy benefits, the Company will be subrogated to the Insured Employee's rights of recovery against the third party who is at fault or liable.  The Insured Employee is required:
1. to actively pursue recovery; and
2. to cooperate in the Company's pursuit of recovery.
If he or she does not, Policy benefits may be denied or suspended.

The Company has the right of first reimbursement out of any recovery (judgment, settlement or other recovery) an Insured Employee is able to obtain even if the Insured Employee is not made whole.

These rights extend only to recovery of Policy benefits paid for the same or related Disability.  The amount of the repayment may be reduced by reasonable expenses the Insured Employee incurs in recovering from the person at fault.

If recovery is made before Policy benefits are paid, the Company's liability under this Policy for that Disability shall be reduced accordingly.  If recovery is made after Policy coverage ends, the Insured Employee must still repay the Company as described above.

## CLAIMS PROCEDURES
### (continued)

**THIRD PARTY REIMBURSEMENT.** The Insured Employee may be entitled to payment or reimbursement from some other person or organization, through a legal action or claim. It must be caused by the same or related Disability for which Policy benefits are payable. In that event, the Company shall have the right to a lien on any recovery from that person or organization. The lien shall apply whether such recovery is by judgment, settlement or otherwise. The amount of the lien will not exceed:

1. the amount actually recovered for such Disability, less reasonable legal fees and expenses the Insured Employee paid to pursue the recovery; or
2. the total amount of Policy benefits paid for the Disability (whichever is less).

If an Insured Employee is entitled to such payment or reimbursement, he or she is required to actively pursue it. If he or she does not, Policy benefits may be denied or suspended. The Insured Employee must take no action to prejudice the Company's right of reimbursement or lien. He or she must:

1. execute any legal instruments; and
2. furnish any information the Company may reasonably require.

The Company has the right of first reimbursement out of any recovery (judgment, settlement or other recovery) an Insured Employee is able to obtain even if the Insured Employee is not made whole.

**RIGHT OF RECOVERY.** If benefits have been overpaid on any short-term disability or long-term disability claim, full reimbursement to the Company is required within 60 days. If reimbursement is not made, the Company has the right to:

1. reduce future benefits and suspend payment of the Minimum Monthly Benefit under this Policy, until full reimbursement is made;
2. reduce benefits payable to the Insured Employee or his or her beneficiary under any group insurance policy issued by the Company, until full reimbursement is made; or
3. recover such overpayments from the Insured Employee or his or her estate.

Such reimbursement is required whether the overpayment is due to:

1. the Company's error in processing a claim;
2. the Insured Employee's receipt of Other Income Benefits;
3. fraud, misrepresentation or omission of relevant facts; or
4. any other reason.

**LEGAL ACTIONS.** No legal action to recover any benefits may be brought until 60 days after the required written proof of claim has been given. No such legal action may be brought more than three years after the date written proof of claim is required.

**COMPANY'S DISCRETIONARY AUTHORITY.** Except for the functions that this Policy clearly reserves to the Policyholder or Employer, the Company has the authority to manage this Policy, interpret its provisions, administer claims and resolve questions arising under it. The Company's authority includes (but is not limited to) the right to:

1. establish administrative procedures, determine eligibility and resolve claims questions;
2. determine what information the Company reasonably requires to make such decisions; and
3. resolve all matters when an internal claim review is requested.

Any decision the Company makes in the exercise of its authority shall be conclusive and binding; subject to the Insured Employee's rights to request a state insurance department review or to bring legal action.

This provision does not apply to residents of California.

## ELIGIBILITY

**ELIGIBLE CLASSES**.  The classes of Employees eligible for insurance are shown in the Schedule of Benefits.  The Company has the right to review and terminate any or all classes eligible under this Policy, if any class ceases to be covered by this Policy.

**ELIGIBILITY DATE**.  An Employee becomes eligible for coverage provided by this Policy on the later of:
1. this Policy's date of issue; or
2. the date the Waiting Period is completed.

**Prior Service Credit Towards Waiting Period**.  The Waiting Period is shown in the Schedule of Benefits.  Prior service in an Eligible Class will apply toward the Waiting Period, when:
1. a former Employee is rehired within one year after his or her employment ends; or
2. an Employee returns from an approved Family or Medical Leave within:
    a. the 12-week leave period required by federal law; or
    b. any longer period required by a similar state law; or
3. an Employee returns from a Military Leave within the period required by federal USERRA law.

## EFFECTIVE DATES

**EFFECTIVE DATE**.  An Employee's initial amount of coverage becomes effective at 12:01 a.m. on the latest of:
1. the first day of the Insurance Month coinciding with or next following the date the Employee becomes eligible for the coverage;
2. the date the Employee resumes Active Work, if not Actively at Work on the day he or she becomes eligible;
3. the date the Employee makes written application for coverage and signs;
    a. a payroll deduction order, if the Employees pay any part of the Policy premium; or
    b. an order to pay premiums from the Employee's Flexible Benefits Plan account, if premiums are paid through such an account; or
4. the date the Company approves the Employee's Evidence of Insurability, if required.

Any increased or additional coverage becomes effective at 12:01 a.m. on the latest of:
1. the first day of the Insurance Month coinciding with or next following the date on which the Insured Employee becomes eligible for the increase, if Actively at Work on that day;
2. the date the Insured Employee resumes Active Work, if not Actively at Work on the day the increase would otherwise take effect; or
3. the date any required Evidence of Insurability is approved by the Company.

Any decrease will take effect on the day of the change, whether or not the Insured Employee is Actively at Work.

**EVIDENCE OF INSURABILITY**.  Evidence of Insurability satisfactory to the Company must be submitted (at the Employee's expense) when:
1. an Employee makes written application for coverage (or an increased amount of coverage) more than 31 days after becoming eligible for the coverage;
2. an Employee makes written application to enroll for coverage after he or she has requested:
    a. to cancel insurance;
    b. to stop payroll deductions for the insurance; or
    c. to stop premium payments from the Flexible Benefits Plan account;
3. coverage is elected after the Employee has caused insurance to lapse, by failing to pay the required premium when due; or
4. optional, supplemental or voluntary coverage is elected in excess of any Guaranteed Issue Amounts shown in the Schedule of Benefits.

## EFFECTIVE DATES
### (Continued)

**EFFECTIVE DATE FOR CHANGE IN ELIGIBLE CLASS.** An Insured Employee may become a member of a different Eligible Class. Coverage under the different Eligible Class will be effective:

1. on the first day of the Insurance Month coinciding with or next following the date of the change;
2. except as stated in the Effective Date provision for increases or decreases.

**REINSTATEMENT RIGHTS.** If an Insured Employee's coverage terminates due to one of the following breaks in service, he or she will be entitled to reinstate the coverage upon resuming Active Work with the Employer within the required timeframe. **"Reinstatement"** or **"to reinstate"** means to re-enroll for Policy coverage, without satisfying a new Waiting Period or providing Evidence of Insurability. Reinstatement is available upon:

1. return from an approved Family or Medical Leave within:
   a. the 12-week period required by federal law; or
   b. any longer period required by a similar state law;
2. return from a Military Leave within the period required by federal USERRA law;
3. return from any other approved leave of absence within six months after the leave begins;
4. return within 12 months following a lay off; or
5. return within 12 months following termination of employment for any other reason.

To reinstate coverage, the Employee must apply for coverage or be re-enrolled within 31 days after resuming Active Work in an Eligible Class. The reinstated amount of insurance may not exceed the amount that terminated. Reinstatement will take effect on the date the Insured Employee returns to Active Work.

If the above conditions are met, then:

1. the months of leave will count towards any unmet Pre-Existing Condition Exclusion period; and
2. a new Pre-Existing Condition Exclusion will not apply to the reinstated amount of insurance.

A new Pre-Existing Condition Exclusion will apply to any increased amount of insurance.

GL3001-LTD-9 04

01/01/14

## INDIVIDUAL TERMINATION

**INDIVIDUAL TERMINATION OF COVERAGE.**  An Insured Employee's coverage will terminate at 12:00 midnight on the earliest of:

1. the date this Policy or the Employer's participation terminates; (but without prejudice to any claim incurred prior to termination);
2. the date the Insured Employee's Class is no longer eligible for insurance;
3. the date such Insured Employee ceases to be a member of an Eligible Class;
4. the last day of the Insurance Month in which the Insured Employee requests termination;
5. the last day of the last Insurance Month for which premium payment is made on the Insured Employee's behalf;
6. the end of the period for which the last required premium has been paid;
7. with respect to a particular insurance benefit, the date the portion of this Policy providing that benefit terminates;
8. the date the Insured Employee's employment with the Employer terminates; unless coverage is continued as provided below; or
9. the date the Insured Employee enters the armed services of any state or country on active duty, except for duty of 30 days or less for training in the Reserves or National Guard. (If the Insured Employee sends proof of military service, the Company will refund any unearned premium.)

**CONTINUATION RIGHTS.**  Ceasing Active Work results in termination of the Insured Employee's eligibility for insurance, but coverage may be continued as follows.

1. **Disability**.  If an Insured Employee is absent due to Total Disability, or is engaged in Partial Disability Employment, coverage may be continued during:
   a. the Elimination Period; provided the Company receives the required premium from the Employer; and
   b. the period for which benefits are payable, without payment of premium.
   Premium payments will be waived from the satisfaction of the Elimination Period until the end of the period for which benefits are payable.  If coverage is to be continued following a period for which premiums were waived, premium payments must be resumed, as they become due.

2. **Family or Medical Leave**.  If an Insured Employee goes on an approved Family or Medical Leave, and is **not** entitled to the more favorable continuation available during Disability, coverage may be continued, until the earliest of:
   a. the end of the leave period approved by the Employer;
   b. the end of the 12-week leave period required by federal law, or any more favorable period required by a similar state law;
   c. the date the Insured Employee notifies the Employer that he or she will not return; or
   d. the date the Insured Employee begins employment with another employer.
   The required premium payments must be received from the Employer, throughout the period of continued coverage.

3. **Military Leave**.  If an Insured Employee goes on a Military Leave, coverage may be continued for the same period allowed for an approved Family or Medical Leave. The required premium payments must be received from the Employer, throughout the period of continued coverage.

4. **Lay-off or Other Leave**.  When an Insured Employee ceases work due to a temporary lay-off, or due to an approved leave of absence (other than an approved Family or Medical Leave or a Military Leave); coverage may be continued for three Insurance Months after the lay-off or leave begins.  The required premium payments must be received from the Employer, throughout the period of continued coverage.

## INDIVIDUAL TERMINATION
### (Continued)

**Conditions.**  In administering the above continuation(s), the Employer must not act so as to discriminate unfairly among Employees in similar situations.  Insurance may not be continued when an Insured Employee ceases Active Work due to a labor dispute, strike, work slowdown or lockout.

**INDIVIDUAL TERMINATION DURING DISABILITY.**  Termination of an Insured Employee's coverage during a Disability will have no effect on benefits payable for that period of Disability.

## POLICY TERMINATION

**POLICY TERMINATION BY THE COMPANY.**  To terminate this Policy, the Company must give the Group Policyholder at least 31 days advance written notice of its intent to do so.   The Company may terminate this Policy on the due date of any premium if:
1. the number of Insured Employees totals less than 10;
2. for Class 1: part of the premium is paid by the Insured Employee and less than 100% of those eligible for coverage are insured and
   for Classes 2 - 4: part of the premium is paid by the Insured Employee and less than 50% of those eligible for coverage are insured and;
3. all of the premium is paid by the Policyholder and less than 100% of those eligible for coverage are insured;
4. the Policyholder, without good cause, fails to:
   a. promptly furnish any information which the Company may reasonably require;
   b. perform its duties pertaining to this Policy in good faith;
5. the Employer ceases to be covered under the state Workers' Compensation program or any other program of like intent.
6. the Company terminates all other policies where permitted by their terms, which provide long-term disability benefits in the same state in which this Policy was issued; or
7. state law otherwise requires this Policy to be terminated.

**POLICY TERMINATION BY THE POLICYHOLDER.**  The Policyholder may terminate this Policy at any time by giving the Company advance written notice.  This Policy will then terminate on:
1. the date the Company receives the notice; or
2. some later date on which the Policyholder and the Company have agreed.

However, termination will not become effective during any period for which premium has been paid to the Company.  The Policyholder remains liable for the payment of premiums to the date of termination.

**AUTOMATIC POLICY TERMINATION.**  If any premium is not paid before the end of the Grace Period; then this Policy will terminate at the end of the Grace Period, without any action on the Company's part.  The Policyholder remains liable for the payment of premiums to the date of termination.

**POLICY TERMINATION DURING DISABILITY.**  Termination of this Policy or an Employer's participation during a Disability shall have no effect on benefits payable to the Insured Employee for that period of Disability.

GL3001-LTD-10 04

01/01/14

## PREMIUMS AND PREMIUM RATES

**PAYMENT OF PREMIUM.**  No coverage provided by this Policy will be in effect until the first premium for such coverage is paid.  For coverage to remain in effect, the Employer must pay each subsequent premium on or before its due date at the Company's Group Insurance Service Office.  The premium must be paid in U.S. dollars.

**PREMIUM RATES.**  The initial premium rates for this Policy are shown on the Face Page of this Policy. Premium rates are subject to change.

**PREMIUM RATE CHANGE.**  The Company may change any premium rate on any of the following dates:
1.  the date this Policy's terms are changed;
2.  the date the Company's liability is changed due to a change in federal, state, or local law;
3.  the date the Company's liability is changed because the Policyholder (or any covered division, subsidiary or affiliated company):
    a.  relocates, dissolves or merges, or is added to or removed from this Policy; or
    b.  ceases to be covered by the state Workers' Compensation program or any other program of like intent; or
    c.  ceases to provide or reduces Sick Leave or Salary Continuance Plan benefits;
4.  the date any coverage for one or more classes ceases to be provided under this Policy;
5.  the date the number of Insured Employees changes by 25% or more from the enrollment on the date this Policy took effect, or the most recent Rate Guarantee Date expired, if later;
6.  on any premium due date on or after this Policy's first anniversary, or any later rate guarantee date agreed upon by the Company.

Unless the Company and the Policyholder agree otherwise, the Company will give at least 31 days' advance written notice of any increase in premium rates.

**MONTHLY PREMIUM AMOUNT.**  The amount of monthly premium due on each due date will be the Total Covered Payroll multiplied by the premium rate.  Changes will not be pro-rated daily.  Instead, premium will be adjusted as follows.
1.  When an Insured Employee's insurance (or increased amount of insurance) takes effect, premium will be charged from the monthly due date coinciding with or next following that change.
2.  When all or part of an Insured Employee's insurance terminates, the applicable premium will cease on the monthly due date coinciding with or next following that termination.
3.  When premiums are paid other than monthly, increases or decreases will result in an adjustment from the premium due date coinciding with or next following that change.

The above manner of charging premium is for accounting purposes only.  It will not extend insurance coverage beyond a date it would have otherwise terminated.

Each premium payment will include any adjustments in past premiums, which are needed due to changes that have not yet been taken into account.  If a premium adjustment involves a return of unearned premium, the amount of the return will be limited to the prior 12-month period.

**GRACE PERIOD.**  A Grace Period of 31 days from the due date will be allowed for the payment of each premium after the first.  This Policy will remain in effect during the Grace Period.  The Policyholder will be liable to the Company for the payment of all premiums due for the period this Policy remains in effect, however.

**WAIVER OF PREMIUM.**  Premium will be administered as follows during any period for which benefits are payable.
1.  Premium payments are waived for an Insured Employee who is Disabled:
    a.  from the first premium due date following the satisfaction of the Elimination Period;
    b.  until the end of any period for which benefits are payable.
2.  If coverage is to be continued following a period during which premiums were waived, premium payments must be resumed as they become due.

GL3001-LTD-11 04

01/01/14

## TOTAL DISABILITY MONTHLY BENEFIT

**BENEFIT**.  The Company will pay a Total Disability Monthly Benefit to an Insured Employee, after the completion of the Elimination Period, if he or she:
1. is Totally Disabled;
2. becomes Disabled while insured for this benefit;
3. is under the Regular Care of a Physician; and
4. at his or her own expense, submits proof of continued Total Disability and Physician's care to the Company upon request.

The Total Disability Monthly Benefit will cease on the earliest of:
1. the date the Insured Employee ceases to be Totally Disabled or dies;
2. the date the Maximum Benefit Period ends; or
3. the date the Insured Employee is able, but chooses not to engage in Partial Disability Employment:
   a. in his or her Own Occupation, during the Own Occupation Period; or
   b. in any Gainful Occupation, after the Own Occupation Period.

Proportional benefits will be paid for a partial month of Total Disability.

At the Company's option, Total Disability Monthly Benefit payments may also be denied or suspended on any of the following dates:
1. the date the Insured Employee (without good cause):
   a. fails to take a required medical exam;
   b. fails to cooperate with the examiner; or
   c. postpones a required exam more than twice;
2. the 45th day after the Company mails a request for additional proof, if not given;
3. the 45th day after the Company mails a request for proof of the Insured Employee's application for any Other Income Benefits to which he or she may be entitled, if not given; or
4. the date the Insured Employee (without good cause) refuses to participate in good faith in a vocational rehabilitation program approved by the Company; if this Policy includes a Mandatory Vocational Rehabilitation Benefit provision.

**AMOUNT**.  The amount of the Total Disability Monthly Benefit equals:
1. the Insured Employee's Basic Monthly Earnings multiplied by the Benefit Percentage (limited to the Maximum Monthly Benefit); minus
2. Other Income Benefits.

The amount of the Total Disability Monthly Benefit will not be less than the Minimum Monthly Benefit, unless the Minimum Monthly Benefit plus Other Income Benefits would exceed 100% of the Insured Employee's Basic Monthly Earnings.

The Benefit Percentage, Maximum Monthly Benefit, Minimum Monthly Benefit, and Maximum Benefit Period are shown in the Schedule of Benefits.

Any Gainful Occ, Standard Integ.
01/01/14

## PROGRESSIVE INCOME BENEFIT

**EFFECTIVE DATE.** An Insured Employee will become insured for the Progressive Income Benefit on:
1.  the effective date of his or her coverage for Long Term Disability Benefits under this Policy; or
2.  the effective date of this provision, if it is added later by amending this Policy.

**Exception:**  The effective date will be delayed for an Insured Employee who is unable to perform one or more Activities of Daily Living or suffers from a Cognitive Impairment on that date.  In that event, the Insured Employee will become insured for this benefit on the first day he or she:
1.  is able to safely and completely perform all of the Activities of Daily Living without another person's active, hands-on help; or
2.  no longer suffers from a Cognitive Impairment.

**BENEFIT.** After completion of the Elimination Period shown in the Schedule of Insurance, the Company will pay an additional monthly benefit to an Insured Employee; if he or she:
1.  is receiving Total Disability or Partial Disability Monthly Benefits under this Policy; and
2.  submits proof of suffering the Loss of Activities of Daily Living or a Cognitive Impairment (as defined below).
Proof must be submitted at the Insured Employee's own expense.

**AMOUNT.** The amount of the Progressive Income Benefit:
1.  will equal 10% of the Insured Employee's Basic Monthly Earnings; but
2.  will not exceed the Maximum Monthly Benefit for Long Term Disability Benefits, or $5,000 per month (whichever is less).
The Maximum Monthly Benefit for Long Term Disability Benefits is shown in the Schedule of Insurance. The Progressive Income Benefit will not be reduced by any Other Income Benefits, or by earnings from any form of employment.

**DURATION.** This Progressive Income Benefit will cease on the earliest of:
1.  the date the Insured Employee no longer suffers from the Loss of Activities of Daily Living or Cognitive Impairment (as defined below);
2.  the date the Insured Employee is no longer entitled to Total Disability or Partial Disability Monthly Benefits under this Policy;
3.  the date the Maximum Benefit Period ends; or
4.  the date the Insured Employee dies.
If this Policy includes a Family Income Benefit, the amount paid to the Eligible Surviving Spouse or Children will not increase due to the Insured Employee's receipt of this Progressive Income Benefit.

## DEFINITIONS

**"Loss of Activities of Daily Living"** means that, due to an Injury or Sickness, the Insured Employee has lost the ability to safely and completely perform **two or more** of the following six Activities of Daily Living without another person's active, hands-on help with all or most of the activity.

The six Activities of Daily Living are:
1.  **Bathing** - washing self in a tub, in a shower or by sponge bath; with or without equipment.
2.  **Dressing** - putting on, taking off, fastening or unfastening garments, any medically necessary braces, or any artificial limbs normally worn.
3.  **Toileting** - getting to, from, on and off toilet; and performing related personal hygiene.
4.  **Transferring** - moving in and out of bed, chair or any wheelchair; with or without equipment such as canes, walkers, crutches, grab bars, other support devices, or mechanical or motorized devices.
5.  **Continence** - voluntarily maintaining control of bladder and bowel function; or performing related personal hygiene, including care of any catheter or colostomy bag, if not continent.
6.  **Eating** - once food is prepared and made available, getting nourishment into one's body by any means.  This includes eating from a table, tray or container (such as a bowl or cup); or using special equipment (such as a feeding tube or intravenous tube).

## PROGRESSIVE INCOME BENEFIT
### (continued)

**"Cognitive Impairment"** means that due to an Injury or Sickness, the Insured Employee:
1. has suffered a permanent deterioration or loss of cognitive or intellectual capacity; and
2. requires another person's active, hands-on help or verbal cues to prevent harm to self or others, due to that impairment.

The impairment must be diagnosed by a Physician based upon clinical evidence and reliable standardized tests of short or long-term memory; orientation as to person, place and time; and deductive or abstract reasoning. It may result from moderate to severe head trauma, stroke, Alzheimer's disease or other form of irreversible dementia.

**"Mental Sickness"** as used in this provision, means any emotional, behavioral, psychological, personality, adjustment, mood or stress-related abnormality, disorder, disturbance, dysfunction or syndrome; regardless of its cause. It includes, but is not limited to:
1. schizophrenia or schizoaffective disorder;
2. bipolar affective disorder, manic depression, or other psychosis; and
3. obsessive-compulsive, depressive, panic or anxiety disorders.

These conditions are usually treated by a psychiatrist, a clinical psychologist or other qualified mental health care provider. Treatment usually involves psychotherapy, psychotropic drugs or similar methods of treatment.

Mental Sickness does **not** include irreversible dementia resulting from stroke; trauma; viral infection; Alzheimer's disease; or other conditions which are not usually treated by a mental health care provider using psychotherapy, psychotropic drugs, or similar methods of treatment.

**"Pre-Existing Condition,"** as used in this provision, means a Sickness or Injury for which the Insured Employee received treatment within 3 months prior to his or her effective date for this benefit. Treatment includes a Physician's consultation, care and services; diagnostic measures; and the prescription, refill or taking of prescribed drugs or medicines.

## EXCLUSIONS AND LIMITATIONS

**Prior Disability.** This benefit will not be payable during a period of Disability which begins before the Insured Employee's effective date of coverage under this benefit.

**Pre-Existing Conditions.** This benefit will not be payable for a Loss of Activities of Daily Living or Cognitive Impairment:
1. which is caused or contributed to by, or results from a Pre-Existing Condition (as defined above); and
2. which begins in the first 12 months after the Insured Employee's effective date under this benefit.

**Mental Sickness and Substance Abuse.** This benefit will not be payable during a period of Disability which is caused or contributed to by or results from a Mental Sickness, alcoholism, or voluntary use of a Controlled Substance; unless prescribed by a Physician. Controlled Substances are those defined as such in Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970, and any amendments to it.

**Other Provisions.** This benefit will be subject to all of the Definitions, Exclusions, Proof of Claim, Waiver of Premium and other provisions of this Policy.

## PARTIAL DISABILITY MONTHLY BENEFIT

**BENEFIT**. The Company will pay a Partial Disability Monthly Benefit to an Insured Employee, after completion of the Elimination Period, if he or she:
1. is Disabled;
2. becomes Disabled while insured for this benefit;
3. is engaged in Partial Disability Employment;
4. is earning at least 20% of Predisability Income when Partial Disability Employment begins;
5. is under the Regular Care of a Physician; and
6. at his or her own expense, submits proof of continued Partial Disability, Physician's care and reduced earnings to the Company upon request.

The Insured Employee does not have to be Totally Disabled prior to receiving Partial Disability Monthly Benefits. The Elimination Period may be satisfied by days of Total Disability, Partial Disability or any combination of these.

The Partial Disability Monthly Benefit will cease on the earliest of:
1. the date the Insured Employee ceases to be Partially Disabled or dies;
2. the date the Maximum Benefit Period ends;
3. the date the Insured Employee earns more than:
   a. 99% of Predisability Income, until Partial Disability Monthly Benefits have been paid for 24 months for the same period of Disability; or
   b. 60% of Predisability Income, after Partial Disability Monthly Benefits have been paid for 24 months for the same period of Disability;
4. the date the Insured Employee is able, but chooses not to work full-time:
   a. in his or her Own Occupation, during the Own Occupation Period; or
   b. in any Gainful Occupation, after the Own Occupation Period.

Proportional benefits will be paid for a partial month of Partial Disability.

At the Company's option, Partial Disability Monthly Benefit payments may also be denied or suspended on any of the following dates:
1. the date the Insured Employee (without good cause):
   a. fails to take a required medical exam;
   b. fails to cooperate with the examiner; or
   c. postpones a required exam more than twice;
2. the 45th day after the Company mails a request for additional proof, if not given;
3. the 45th day after the Company mails a request for proof of the Insured Employee's application for any Other Income Benefits to which he or she may be entitled, if not given; or
4. the date the Insured Employee (without good cause) refuses to participate in good faith in a vocational rehabilitation program approved by the Company; if this Policy includes a Mandatory Vocational Rehabilitation Benefit provision.

## PARTIAL DISABILITY MONTHLY BENEFIT
### (Continued)

BENEFIT AMOUNT.  The Partial Disability Monthly Benefit will replace the Insured Employee's Lost Earning Capacity; provided it does not exceed the Total Disability Monthly Benefit, which would otherwise be payable during Total Disability without the Partial Disability Employment.

Thus, the amount of the Partial Disability Monthly Benefit will equal the lesser of A or B below.

A.   LOST EARNING CAPACITY:  The Insured Employee's Predisability Income, minus all Other Income Benefits (including earnings and potential earnings from Partial Disability Employment).

B.   TOTAL DISABILITY MONTHLY BENEFIT otherwise payable:
1.   The Insured Employee's Predisability Income multiplied by the Benefit Percentage (limited to the Maximum Monthly Benefit); minus
2.   Other Income Benefits, except for earnings and potential earnings from Partial Disability Employment.

The Partial Disability Monthly Benefit will never be less than the Minimum Monthly Benefit.  The Benefit Percentage, Maximum Monthly Benefit, Minimum Monthly Benefit, and Maximum Benefit Period are shown in the Schedule of Benefits.

FULL EARNING CAPACITY.  Potential earnings from Partial Disability Employment will be estimated by the Company, when the Insured Employee is able to increase his or her earnings:
1.   during the Own Occupation Period, by increasing the number of hours worked or duties performed in his or her regular occupation, but chooses not to do so; or
2.   after the Own Occupation Period, by increasing the number of hours worked or duties performed in any Gainful Occupation; but chooses not to do so.

Such potential earnings will reduce the Partial Disability Monthly Benefit amount payable, while the Insured Employee is not working to his or her full earning capacity.  Gainful Occupation will be defined as shown in the Total Disability Monthly Benefit section.

Progressive Calculation, Full Capacity

For Classes 1, 2, 3, 4

GL3001-LTD-13.6

01/01/14

## OTHER INCOME BENEFITS

**OTHER INCOME BENEFITS** means benefits, awards, settlements or Earnings from the following sources. These amounts will be offset, in determining the amount of the Insured Employee's Monthly Benefit. Except for Retirement Benefits and Earnings, these amounts must result from the same Disability for which a Monthly Benefit is payable under this Policy.

**Workers' Compensation**.   Any benefits for which the Insured Employee is eligible under a law that compensates for job related Injury or Sickness.  This includes:
  1. any Workers' Compensation or occupational disease law;
  2. the Jones Act;
  3. the Longshoreman's and Harbor Worker's Act;
  4. the Maritime Doctrine of Maintenance, Wages or Cure; or
  5. any plan provided in place of one of the above plans.
It includes any benefits for partial or total disability, whether temporary or permanent.  It also includes any benefits for vocational rehabilitation.

**Other Compulsory Benefits**.  Any disability income benefits the Insured Employee is eligible to receive under any other compulsory benefit act or law.  This includes (but is not limited to):
  1. state temporary disability income benefit laws;
  2. state no fault auto insurance laws; or
  3. any other compulsory benefit act or law.

**Other Insurance Plans**.  Any disability income benefits for which the Insured Employee is eligible under:
  1. any other group insurance plan (except credit or mortgage insurance);
  2. any no fault auto plan; or
  3. any auto liability insurance policy.

**Employee Benefit Plans**.  Any disability income benefits for which the Insured Employee is eligible under the Employer's Sick Leave or Salary Continuance Plan.  This does **not** include vacation pay, severance pay or pay for work actually performed during a Disability.

**Employer's Retirement Plan**.  Any Disability Benefits or Retirement Benefits the Insured Employee receives under the Employer's Retirement Plan.

**Social Security and other Government Retirement Plans**.   The following Social Security or other Government Retirement Plan benefits will be offset:
  1. **disability benefits** for which the Insured Employee is eligible; and for which any spouse or child is eligible, because of the Insured Employee's Disability;
  2. **unreduced retirement benefits** for which the Insured Employee is eligible; and for which any spouse or child is eligible, because of the Insured Employee's eligibility for unreduced retirement benefits; or
  3. **reduced retirement benefits** actually received by the Insured Employee; and by any spouse or child, because of the Insured Employee's receipt of reduced retirement benefits.

As used above, **"Government Retirement Plans"** include disability and retirement benefits under:
  1. the federal Social Security Act, Jones Act or Railroad Retirement Act;
  2. the Canada Pension Plan or Quebec Pension Plan;
  3. any similar plan or act of any country, state, province or other political unit; or
  4. any plan provided in place of one of the above plans.

## OTHER INCOME BENEFITS
### (continued)

**"Earnings"**, as used in this provision, means pay the Insured Employee earns or receives from any occupation or form of employment, as reported for federal income tax purposes. Earnings include (but are not limited to) a:

1. salaried or hourly Employee's gross earnings (shown on Form W-2); including:
   a. wages, tips, commissions, bonuses and overtime pay; and
   b. any pre-tax contributions to a Section 125 Plan, flexible spending account, or qualified deferred compensation plan;
2. proprietor's net profit (figured from Form 1040, Schedule C);
3. professional corporation shareholder's net profit (figured from Form 1040, Schedule C);
4. partner's net earnings from self-employment (shown on Schedule K-1) and any W-2 earnings; and
5. Subchapter S Corporation shareholder's net earnings from trade or business activities (shown on Schedule K-1).

**Recovery from Third Party**. Any amount the Insured Employee recovers from a third party as a result of the Disability (whether by judgment, settlement or otherwise). The offset:

1. will be reduced by attorney fees and other reasonable costs of recovery; and
2. will not exceed 100% of the net settlement.

**Exceptions**. The following will **not** be considered Other Income Benefits, and will not be offset in determining the Monthly Benefit:

1. a cost-of-living increase in any Other Income Benefit (except Earnings); if it takes effect after the first offset for that benefit during a period of Disability;
2. reimbursement for hospital, medical or surgical expense;
3. reimbursement for attorney fees and other reasonable costs of claiming Other Income Benefits;
4. group credit or mortgage disability insurance benefits;
5. early retirement benefits that are not elected or received under the federal Social Security Act or other Government Retirement Plan;
6. any amounts under the Employer's Retirement Plan that:
   a. represent the Insured Employee's contributions; or
   b. are received upon termination of employment without being disabled or retired;
7. benefits from a 401(k), profit-sharing or thrift plan; an individual retirement account (IRA); a tax sheltered annuity (TSA); a stock ownership plan; or a non-qualified plan of deferred compensation;
8. vacation pay, holiday pay, or severance pay; or
9. disability income benefits under any individual policy, association group plan or franchise plan.

## OTHER INCOME BENEFITS
### (continued)

**RULES FOR OTHER INCOME BENEFIT OFFSETS.**  If the Insured Employee may be entitled to Other Income Benefits that affect Policy benefits, the following rules will apply.

**Claiming Other Income Benefits.**  An Insured Employee who may be entitled to some Other Income Benefit is required to actively pursue it.  For example, if benefits may be payable under the federal Social Security Act, the Insured Employee:
1. must apply for such benefits on a timely basis;
2. must file a request for reconsideration, if benefits are denied; and
3. must request a hearing before an Administrative Law Judge, if denied again (unless the Company waives this in writing).

An Employer whose Insured Employee may be entitled to Workers' Compensation or similar benefits is also required to cooperate in filing that claim.  If the Insured Employee fails to pursue Other Income Benefits on a timely basis, the Company has the option to:
1. deny or suspend Monthly Benefits; or
2. reduce Monthly Benefits by an estimated amount.

**Estimating Offsets.**  While a claim for Social Security or other Government Retirement Plan benefits is pending, the Insured Employee must elect one of the following options in writing.  (If no written election is made, Monthly Benefits will be reduced in accord with Option 1.)

1. **Reduced Monthly Benefits.**  The Insured Employee may receive Monthly Benefits reduced by estimated Social Security or other Government Retirement Plan benefits.  The Company will adjust Policy benefits and will refund any underpayment, in a lump sum, upon receiving proof of:
   a. the amount actually awarded; or
   b. the claim denial and completion of any appeal the Company requires.

2. **Unreduced Monthly Benefits.**  The Insured Employee may receive unreduced Monthly Benefits while the claim is pending.  He or she must agree in writing to promptly refund any overpayment that results, in a lump sum, upon receiving Social Security or other Government Retirement Plan benefits.   If he or she does not promptly refund an overpayment:
   a. the Company will reduce or eliminate future payments; and
   b. the Minimum Monthly Benefit will not apply, until the amount is repaid.

**Lump Sum Payments.**  Other Income Benefits that are paid in a lump sum will be pro rated as follows.
1. The lump sum will be pro rated on a monthly basis, over the time period for which it is given.
2. If no time period is stated, the Company will continue its estimated monthly offset for that benefit, until full amount is offset.
3. If no estimated monthly offset was being made for that benefit, the lump sum will be pro rated on a monthly basis over a reasonable time period.   It will not exceed 60 months or the Maximum Benefit Period (whichever occurs first).

**Cost-of-Living Freeze.**  After the first deduction for each of the Other Income Benefits (except Earnings), its amount will be frozen.  The Monthly Benefit will not be further reduced due to any cost-of-living increases payable under these Other Income Benefits.

## RECURRENT DISABILITY

"**Recurrent Disability**" means a Disability caused by an Injury or Sickness that is the same as, or related to, the cause of a prior Disability for which Monthly Benefits were payable. A Recurrent Disability will be treated as follows.

1.  **New Disability.** A Recurrent Disability will be treated as a new Disability, if the Recurrent Disability begins after the Insured Employee returns to his or her Own Occupation with the Employer:
    a.  on a full-time basis working at least the Minimum Number of Hours Per Week as shown in the Schedule of Benefits; and
    b.  for six consecutive months or more following the date the prior Disability benefits ended.
    A new Elimination Period must be completed before further Monthly Benefits become payable. A new Maximum Benefit Period will apply.

2.  **Prior Disability.** A Recurrent Disability will be treated as part of the prior Disability, if the Recurrent Disability begins after the Insured Employee returns to his or her Own Occupation with the Employer:
    a.  on a full-time basis working at least the Minimum Number of Hours Per Week as shown in the Schedule of Benefits; but
    b.  for less than six consecutive months following the date the prior Disability benefits ended.
    The completion of a new Elimination Period is not required before further Monthly Benefits become payable. The same Maximum Benefit Period will apply to the Recurrent Disability as to the prior Disability. The Predisability Income used in determining the prior Disability benefit will apply as well.

    In addition, a Recurrent Disability will be treated as a prior Disability if all of the subsequent events occur in less than six consecutive months following the date the prior Disability benefits end under this Policy:
    a.  a job opening is not available for the Insured Employee to return to work with the Employer;
    b.  the Insured Employee's coverage under this Policy terminates;
    c.  the former Employee returns to his or her Own Occupation with a new employer on a full-time basis working at least the Minimum Number of Hours Per Week as shown in the Schedule of Benefits;
    d.  benefits are not payable under any other group long-term disability plan; and
    e.  a Recurrent Disability begins.
    Benefits for the former Employee will be reinstated for the Recurrent Disability and the completion of a new Elimination Period will not be required before further Monthly Benefits become payable. The same Maximum Benefit Period, Exclusions, and Limitations will apply to the Recurrent Disability as to the prior Disability. The Predisability Income used in determining the prior Disability benefit will apply as well. Benefits reinstated under this provision are subject to this Policy's terms and conditions that were in effect at the time the prior Disability began.

To qualify for a Monthly Benefit, the Insured Employee or former Employee must earn less than the percentage of Predisability Income specified in the Partial Disability Monthly Benefit section. Monthly Benefit payments will be subject to all other terms of this Policy that applied to the prior Disability.

This Recurrent Disability provision will cease to apply to an Insured Employee or former Employee who becomes eligible for coverage under any other group long-term disability plan.

## EXCLUSIONS

**GENERAL EXCLUSIONS.**  This Policy will not cover any period of Total or Partial Disability:
1.  due to war, declared or undeclared, or any act of war;
2.  due to intentionally self-inflicted injuries;
3.  due to active participation in a riot;
4.  due to the Insured Employee's committing of or the attempting to commit a felony or any type of assault or battery;
5.  during which the Insured Employee is incarcerated for the commission of a felony;
6.  during which the Insured Employee is not under the Regular Care of a Physician;
7.  during which the Insured Employee is not participating in good faith in a vocational rehabilitation program approved by the Company, without good cause; if this Policy includes a Mandatory Vocational Rehabilitation Benefit provision; or
8.  after the Insured Employee has resided outside the United States or Canada for more than 12 consecutive benefit months for purposes other than employment with the Employer.

**PRE-EXISTING CONDITION EXCLUSION.**  This Policy will not cover any Total or Partial Disability:
1.  which is caused or contributed to by, or results from a Pre-Existing Condition; and
2.  which begins in the first 12 months after the Insured Employee's Effective Date.

"Pre-Existing Condition" means a Sickness or Injury for which the Insured Employee received treatment within 3 months prior to the Insured Employee's Effective Date.

"Treatment" means consultation, care or services provided by a Physician.  It includes diagnostic measures and the prescription, refill of prescription, or taking of any prescribed drugs or medicines.

## SPECIFIED INJURIES OR SICKNESSES LIMITATION

LIMITATION.  If an Insured Employee is Disabled primarily due to one or more of the Specified Injuries or Sicknesses defined below; then Partial or Total Disability Monthly Benefits:
1.    will be payable subject to the terms of this Policy; but
2.    will be limited to 12 months for any one period of Disability; unless the Insured Employee is confined to a Hospital.

"Specified Injuries or Sicknesses" include any Chronic Fatigue Sickness, Environmental Sickness, Mental Sickness, Musculoskeletal/Connective Tissue Injury or Sickness, or Substance Abuse, as defined below.

CONDITIONS
1.    If the Insured Employee is confined in a Hospital at the end of the 12th month for which Policy benefits are paid for the Specified Injury or Sickness; then benefits will be payable until he or she is discharged from that facility.
2.    In no event will the Monthly Benefit be paid beyond the Maximum Benefit Period shown in the Schedule of Insurance, however.

DEFINITIONS

**"Chronic Fatigue Sickness"** means a sickness that is characterized by a debilitating fatigue, in the absence of other known medical or psychological conditions.  It includes, but is not limited to:
1.    chronic fatigue syndrome or chronic fatigue immunodeficiency syndrome;
2.    an Epstein-Barr or herpes 6 viral infection, or post viral syndrome; and
3.    limbic encephalopathy or myalgic encephalomyelitis.
It does **not** include depression or any neoplastic, neurologic, endocrine, hematologic or rheumatologic disorder.

**"Environmental Sickness"** means an allergy or sensitivity to chemicals or the environment.  It includes, but is not limited to:
1.    environmental allergies;
2.    sick building syndrome;
3     multiple chemical sensitivity syndrome; and
4.    chronic toxic encephalopathy.
It does **not** include asthma or allergy-induced reactive lung disease.

**"Hospital,"** as used in this provision, means:
1.    a general hospital which:
    a.    is licensed, approved or certified by the state where it is located;
    b.    is recognized by the Joint Commission on the Accreditation of Hospitals; or
    c.    is operated to treat resident inpatients; has a registered nurse always on duty; and has a lab, x-ray facility and place where major surgery is performed; and
2.    a skilled nursing care facility or unit, which provides convalescent or nursing care; and which is recognized as a skilled nursing care facility under Medicare.
The term Hospital also includes:
1.    a Mental Hospital when treatment is for a Mental Sickness; and
2.    a Treatment Center when treatment is for Substance Abuse.

**"Mental Hospital"** means a health care facility (or its psychiatric unit) which:
1.    is licensed, certified or approved as a mental hospital by the state where it is located;
2.    is equipped to treat resident inpatients' mental diseases or disorders; and
3.    has a resident psychiatrist on duty or on call at all times.

**"Mental Sickness"** means any emotional, behavioral, psychological, personality, adjustment, mood or stress-related abnormality, disorder, disturbance, dysfunction or syndrome; regardless of its cause.  It includes, but is not limited to:
1.  schizophrenia or schizoaffective disorder;
2.  bipolar affective disorder, manic depression, or other psychosis; and
3.  obsessive-compulsive, depressive, panic or anxiety disorders.

These conditions are usually treated by a psychiatrist, a clinical psychologist or other qualified mental health care provider.   Treatment usually involves psychotherapy, psychotropic drugs or similar methods of treatment.

Mental Sickness does not include irreversible dementia resulting from:
1.  stroke, trauma, viral infection, Alzheimer's disease; or
2.  other conditions which are not usually treated by a mental health care provider using psychotherapy, psychotropic drugs, or similar methods of treatment.

**"Musculoskeletal/Connective Tissue Injury or Sickness"** includes, but is not limited to:
1.  scoliosis that does not require surgery;
2.  any other disease or disorder of the cervical, thoracic or lumbosacral back and surrounding soft tissue; unless documented by x-ray, electromyogram, computerized tomography or magnetic resonance imaging;
3.  sprains or strains of the muscles, joints and adjacent tissues;
4.  fibromyalgia, carpal tunnel syndrome, or repetitive motion syndrome; and
5.  myofascial pain, or any craniomandibular or temporomandibular joint disorder (TMJ).

It does **not** include:
1.  scoliosis that requires surgery, or spondylolisthesis of grade II or higher;
2.  radiculopathies or herniated discs that are documented by x-ray, electromyogram, computerized tomography or magnetic resonance imaging;
3.  tumors, malignancies, vascular malformations, or osteopathies;
4.  myelopathies, myelitis, or demyelinating disease; or
5.  lupus, or rheumatoid or psoriatic arthritis.

**"Substance Abuse"** means alcoholism, drug abuse, or chemical dependency of any type.

**"Treatment Center"** means a health care facility (or its medical or psychiatric unit) which:
1.  is licensed, certified or approved by the state where it is located;
2.  has a program for inpatient treatment of substance abuse; and
3.  provides such treatment based upon a written plan approved and supervised by a Physician.

## MANDATORY VOCATIONAL REHABILITATION BENEFIT PROVISION

BENEFIT.  If an Insured Employee is Disabled and is receiving Policy benefits; then he or she may be eligible for a Vocational Rehabilitation Benefit.  This Benefit consists of services which may include:
1.    vocational evaluation, counseling, training or job placement;
2.    job modification or special equipment; and
3.    other services which the Company deems reasonably necessary to help the Insured Employee return to work.
The Company will determine the Insured Employee's eligibility and the amount of any Benefit payable.

ELIGIBILITY.  An Insured Employee may be eligible for this Benefit, if the Company finds that he or she:
1.    has a Disability that prevents the performance of his or her regular occupation; and, after the Own Occupation Period, also lacks the skills, training or experience needed to perform any other Gainful Occupation;
2.    has the physical and mental abilities needed to complete a Program; and
3.    is reasonably expected to return to work after completing the Program; in view of the labor force demand for workers in the proposed occupation.
The Company must also find that the cost of the proposed services is less than its expected claim liability.

AMOUNT.  The amount of any Vocational Rehabilitation Benefit will not exceed the Company's expected claims liability.  This benefit will not be payable for services covered under the Insured Employee's health care plan or any other vocational rehabilitation program.  Payment may be made to the provider of the services, at the Company's option.

CONDITIONS.  Either the Company, the Insured Employee, or his or her Physician may first propose vocational rehabilitation.  When a Program is approved by the Company, this Policy's definition of "Disability" will be waived during the rehabilitation period; but it will be reapplied after the Program ends.  The Company will determine the amount and duration of any Long Term Disability benefits payable after the Program ends.

LIMITATIONS.  This Policy will not cover any period of Disability:
1.    for an Insured Employee who, without good cause, refuses to take part in good faith in a Program designed to return the person to work:
    a.    in his or her regular occupation, during the Own Occupation Period; or
    b.    in any Gainful Occupation after the Own Occupation Period; or
2.    for an Insured Employee who has received a Vocational Rehabilitation Benefit and has failed to complete the Program, without Good Cause.

DEFINITIONS
"**Gainful Occupation**" means any occupation in which the Insured Employee:
1.    is or could reasonably become qualified, considering his or her education, training, experience, and mental and physical abilities;
2.    could reasonably find employment, considering the demand in the national labor force; and
3.    could earn (or reasonably expect to earn) a before-tax income at least equal to 60% of his or her Predisability Income, within 12 months of returning to work.
"**Good Cause**", as used in this provision, means the Insured Employee's:
1.    documented physical or mental impairments, which render the Insured Employee unable to take part in or complete a Program;
2.    involvement in a medical program, which prevents or interferes with the Insured Employee's taking part in or completing a Program; or
3.    participating in good faith in some other vocational rehabilitation program, which:
    a.    conflicts with taking part in or completing a Program developed by the Company; and
    b.    is reasonably expected to return the Insured Employee to work.
"**Program**" means a written vocational rehabilitation program:
1.    which the Company develops with input from the Insured Employee; his or her Physician; and any current or prospective employer, when appropriate; and
2.    which describes the Program's goals; each party's responsibilities; and the times, dates and costs of the rehabilitation services.

## REASONABLE ACCOMMODATION BENEFIT

If an Insured Employee of the Employer is Disabled, and is receiving Policy benefits; then the Employer may be eligible for a Reasonable Accommodation Benefit.  This Benefit reimburses the Employer for 50% of the expense incurred for reasonable accommodation services for the Insured Employee; but will not exceed:

1.   a maximum benefit of $5,000 for any one Insured Employee; or
2.   the Company's expected liability for the Insured Employee's Long Term Disability claim (whichever is less).

Such services may include:

1.   providing the Insured Employee a more accessible parking space or entrance;
2.   removing barriers or hazards to the Insured Employee from the worksite;
3.   special seating, furniture or equipment for the Insured Employee's work station;
4.   providing special training materials or translation services during the Insured Employee's training; and
5.   other services the Company deems reasonably necessary to help the Insured Employee return to work with the Employer.

ELIGIBILITY FOR BENEFIT.  The Company will determine the Employer's eligibility to receive the Benefit.  To qualify for the Benefit, the Employer must have an Insured Employee:

a.   whose Disability prevents the performance of his or her regular occupation at the Employer's worksite;
b.   who has the physical and mental abilities needed to perform his or her own or another occupation at the Employer's worksite; but only with the help of the proposed accommodation; and
c.   who is reasonably expected to return to work with the help of the proposed accommodation.

The Company must also find that the requested Reasonable Accommodation Benefit is less than the expected liability for the Insured Employee's Long Term Disability claim.

WRITTEN PROPOSAL.  The reasonable accommodation services must be provided in accord with a written proposal, which is developed with input from:

1.   the Employer;
2.   the Insured Employee; and
3.   his or her Physician, when appropriate.

The proposal must state the purpose of the proposed accommodation; and the times, dates and costs of the services.

CONDITIONS.  Either the Company, the Employer, the Insured Employee, or his or her Physician may first propose an accommodation.

The proposal must be approved by the Company in writing.

The Company will then reimburse the Employer, upon receipt of proof that the Employer:

1.   has provided the services for the Insured Employee; and
2.   has paid the provider for the services.

GL3001-LTD-17.3

01/01/14

## PRIOR INSURANCE CREDIT UPON TRANSFER OF INSURANCE CARRIERS

To prevent loss of coverage for an Employee because of a transfer of insurance carriers, this Policy will provide Prior Insurance Credit for employees insured under the prior carrier's policy on its termination date as follows.

FAILURE TO BE ACTIVELY-AT-WORK DUE TO INJURY OR SICKNESS.   Subject to premium payments, this Policy will provide coverage to an Employee:
1.   who was insured by the prior carrier's policy at the time of transfer; and
2.   who was not Actively-At-Work due to Injury or Sickness on this Policy's Effective Date.

The coverage will be that provided by the prior carrier's policy, had it remained in force.  The Company will pay:
1.   the benefit that the prior carrier would have paid; minus
2.   any amount for which the prior carrier is liable.

DISABILITY DUE TO A PRE-EXISTING CONDITION.  Benefits may be payable for a Total Disability due to a Pre-Existing Condition for an Employee who:
1.   was insured by the prior carrier's policy at the time of transfer; and
2.   was Actively-At-Work and insured under this Policy on this Policy's Effective Date.

The benefits will be determined as follows:
1.   The Company will apply this Policy's Pre-Existing Condition Exclusion.  If the Insured Employee qualifies for benefits, such Insured Employee will be paid according to this Policy's benefit schedule.
2.   If the Insured Employee cannot satisfy this Policy's Pre-Existing Condition Exclusion, but can satisfy the prior carrier's pre-existing condition exclusion giving consideration towards continuous time insured under both policies; then he or she will be paid in accord with the benefit schedule and all other terms, conditions and limitations of:
     a.   this Policy without applying the Pre-Existing Condition Exclusion; or
     b.   the prior carrier's policy;
     whichever is less.
3.   If the Insured Employee cannot satisfy the Pre-Existing Condition Exclusion of this Policy or that of the prior carrier, no benefit will be paid.

Prior Insurance Credit

GL3001-LTD-18 99

01/01/14

## FAMILY INCOME BENEFIT

The Company will pay a lump sum benefit to the Eligible Survivor when proof is received that an Insured Employee died:
1.    after Disability had continued for 180 or more consecutive days; and
2.    while receiving a Monthly Benefit.

The benefit will be equal to three times the Insured Employee's Last Monthly Benefit.

"Last Monthly Benefit" means the gross Monthly Benefit payable to the Insured Employee immediately prior to death.  Any reductions for Other Income Benefits, or for earnings the Insured Employee received for Partial Disability Employment, will not apply.

"Eligible Survivor" means the Insured Employee's:
1.    surviving spouse; or, if none
2.    surviving children who are under age 25 on the Insured Employee's date of death.

If payment becomes due to the Insured Employee's children; then payment will be made to:
1.    the surviving children, in equal shares; or
2.    a person named by the Company to receive payments on the children's behalf.

This payment will be valid and effective against all claims by others representing, or claiming to represent, the children.

Three Month Survivor Benefit

GL3001-LTD-19 94

01/01/14

## RECOVERY BENEFIT
## FOR COMMISSIONED EMPLOYEES

**BENEFIT.**  The Company will pay a Recovery Benefit to an Insured Employee who returns to Full-Time employment in his or her Own Occupation with the Employer and:
1.   earned commissions as part of Predisability Income;
2.   has received Total or Partial Disability Benefits for at least 1 month;
3.   upon return continues to earn commissions; and
4.   earns less than 100% of Predisability Income.

**AMOUNT.**  The amount of the Recovery Benefit equals the Insured Employee's Predisability Income minus all Other Income Benefits, limited to the Maximum Monthly Benefit.

**TERMINATION OF RECOVERY BENEFIT.**  An Insured Employee's Recovery Benefit will terminate on the earliest of:
1.   the date the Insured Employee's earnings upon return to Full-Time employment equal or exceed 100% of Predisability Income; or
2.   six months after the Insured Employee returns to Full-Time employment in his or her Own Occupation with the Employer.

GL3001-LTD-35-RB

01/01/14

## LIMITATIONS AND EXCLUSIONS UNDER THE ARKANSAS LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION ACT

Residents of this state who purchase life insurance, annuities or disability insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the Arkansas Life and Health Insurance Guaranty Association ("Guaranty Association").   The purpose of the Guaranty Association is to assure that policy and contract owners will be protected, within certain limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations.   If this should happen, the Guaranty Association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases, to keep coverage in force.   The valuable extra protection provided by these insurers through the Guaranty Association is not unlimited, however. And, as noted below, this protection is not a substitute for consumers' care in selecting companies that are well-managed and financially stable.

### DISCLAIMER

**The Arkansas Life and Health Insurance Guaranty Association ("Guaranty Association") may not provide coverage for this policy.  If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in this state.  You should not rely on coverage by the Guaranty Association in purchasing an insurance policy or contract.**

**Coverage is NOT provided for your policy or contract or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as non-guaranteed amounts held in a separate account under a variable life or variable annuity contract.**

**Insurance companies or their agents are required by law to provide you with this notice. However, insurance companies and their agents are prohibited by law from using the existence of the Guaranty Association to induce you to purchase any kind of insurance policy.**

**The Arkansas Life and Disability Insurance Guaranty Association**
**c/o The Liquidation Division**
**1023 West Capitol**
**Little Rock, Arkansas  72201**

**Arkansas Insurance Department**
**1200 West Third Street**
**Little Rock, Arkansas  72201-1904**

The state law that provides for this safety-net is called the Arkansas Life and Health Insurance Guaranty Association Act ("Act").   The following paragraphs are a brief summary of the Act's coverages, exclusions and limits.   This summary does not cover all provisions of the Act; nor does it in any way change anyone's rights or obligations under the Act or the rights or obligations of the Guaranty Association.

**COVERAGE.**  Generally, individuals will be protected by the Guaranty Association if they live in this state and hold a life, annuity or health insurance contract or policy, or if they are insured under a group insurance contract, issued by a member insurer.   The beneficiaries, payees or assignees of insured persons are protected as well, even if they live in another state.

**EXCLUSIONS FROM COVERAGE.**  However, persons holding such policies are NOT protected by the Guaranty Association if:
- they are eligible for protection under the laws of another state (this may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state);
- the insurer was not authorized to do business in this State;

- their policy or contract was issued by a nonprofit hospital or medical service organization, an HMO, a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company or similar plan in which the policyholder is subject to future assessments, or by an insurance exchange.

The Guaranty Association also does NOT provide coverage for:
- any policy or contract or portion of a policy which is not guaranteed by the insurer or for which the owner has assumed the risk, such as non-guaranteed amounts held in a separate account under a variable life or variable annuity contract;
- any policy of reinsurance (unless an assumption certificate was issued);
- interest rate yields that exceed an average rate;
- dividends, voting rights and experience rating credits;
- credits given in connection with the administration of a policy by a group contract holder;
- employers' plans to the extent they are self-funded (that is, not insured by an insurance company, even if an insurance company administers them);
- unallocated annuity contracts (which give rights to group contractholders, not individuals);
- unallocated annuity contracts issued to/in connection with benefit plans protected under Federal Pension Benefit Corporation ("FPBC") whether the FPBC is yet liable or not;
- portions of an unallocated annuity contract not owned by a benefit plan or a government lottery (unless the owner is a resident) or issued to a collective investment trust or similar pooled fund offered by a bank or other financial institution);
- portions of a policy or contract to the extent assessments required by law for the Guaranty Association are preempted by State or Federal law;
- obligations that do not arise under the policy or contract, including claims based on marketing materials or side letters, riders, or other documents which do not meet filing requirements, or claims for policy misrepresentations, or extra-contractual or penalty claims;
- contractual agreements establishing the member insurer's obligations to provide book value accounting guarantees for defined contribution benefit plan participants (by reference to a portfolio of assets owned by a nonaffiliate benefit plan or its trustees).

**LIMITS ON AMOUNT OF COVERAGE.** The Act also limits the amount the Guaranty Association is obligated to cover. The Guaranty Association cannot pay more than what the insurance company would owe under a policy or contract. Also, for any one insured life, the Guaranty Association will pay a maximum of $300,000 - no matter how many policies and contracts there were with the same company, even if they provided different types of coverages. Within this overall $300,000 limit, the Association will not pay more than $300,000 in health insurance benefits, $300,000 in present value of annuity benefits, or $300,000 in life insurance death benefits or net cash surrender values - again, no matter how many policies and contracts there were with the same company, and no matter how many different types of coverages. There is a $1,000,000 limit with respect to any contract holder for unallocated annuity benefits, irrespective of the number of contracts held by the contract holder. These are limitations for which the Guaranty Association is obligated before taking into account either its subrogation and assignment rights or the extent to which those benefits could be provided out of the assets of the impaired or insolvent insurer.

## SERVICE AND COMPLAINT CONTACTS

Company's Policyholder Service Office: The Lincoln National Life Insurance Company
Address:  8801 Indian Hills Drive, Omaha, Nebraska 68114-4066
Telephone Number:  800-423-2765
Agent's Name:  Ramsey, Krug, Farrell & Lensing, Inc.
Address:  8315 Cantrell Rd. Ste. 300, Little Rock, AR 72227
Telephone Number:  (501) 664-7705

If we at The Lincoln National Life Insurance Company fail to provide you with reasonable and adequate service, you should feel free to contact:

Arkansas Insurance Dept., Customer Services Division
1200 West Third Street, Little Rock, Arkansas 72201
Telephone Number: 1-800-852-5494

AR NOTICE-POL. 04

L,A&H
01/01/14

 Lincoln **Financial Group®**

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.


**EXHIBIT**
B

The Lincoln National Life
Insurance Company
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.Lincoln4benefits.com

May 6, 2020

DANIEL A. WEBB, P.A.
ATTORNEY AT LAW
111 CENTER STREET
SUITE 1200
LITTLE ROCK, AR 72201

Re:   Policyholder: Nabholz Incorporated
      Policy Number: 00001007377100000
      Claim Number: 1170001096
      Claimant: Larry Hitchcock

Dear Mr. Webb:

We have completed our review of your client's Long Term Disability appeal.  Based on the information provided, we have determined that we are unable to approve benefits beyond 01/13/2019. In our appeal review process, all information previously submitted as well as any new documentation was used to make a determination.

To receive benefits under the policy issued to Nabholz Incorporated, an individual must satisfy all of the provisions of the policy.  This includes, but is not limited to, the following:

**TOTAL DISABILITY** or **TOTALLY DISABLED** will be defined as follows:
1.   During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
2.   After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any Gainful Occupation.
The loss of a professional license, an occupational license or certification, or a driver's license for any reason does **not**, by itself, constitute Total Disability.

**GAINFUL OCCUPATION** means any occupation in which the Insured Employee:
1.   is or could reasonably become qualified, considering his or her education, training, experience, mental and physical abilities;
2.   could reasonably find employment, considering the demand in the national labor force; and
3.   could earn (or reasonably expect to earn) a before-tax income at least equal to 60% of his or her Predisability Income, within 12 months of returning to work.

©2020  Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

The policy has a 24 month Own Occupation Period which ended on 01/13/2019. In order to be considered Totally Disabled beyond this date, the medical documentation must support your client's inability to perform each of the main duties of any occupation for which your client is qualified. As such, in considering whether your client qualifies for Long Term Disability benefits beyond 01/13/2019, we evaluated whether your client would be restricted or limited from performing the main duties of any occupation for which your client is qualified.

Your client's entire file was reviewed upon appeal. Disability must be supported from 01/13/2019 forward, which was the focus of our determination.

## Summary of Initial Claim Filing

As you know your client's claim was originally approved from 01/13/2017 to 01/13/2019 as we found your client met the definition of Total Disability that applied during this period. Benefits were terminated as of 01/13/2019, because we determined your client was not Totally Disabled as defined above. Our evaluation included review of the medical documentation including consultation with and/or review of a written report from Dr Brian Strizik, an independent physician who is Board Certified in Cardiovascular Disease. For complete details please refer to our letter dated 12/24/2018.

The letter noted in part, the following:

> A peer review by Dr. Strizik on 12/14/2018 noted a medical history of coronary artery disease with prior myocardial infarction, diabetes mellitus, hypertension, former smoker, sleep apnea, diverticulosis and vasovagal syncope. You were evaluated for shortness of breath in July 2018 and underwent cardiac testing which showed no ischemia and a normal ejection fraction of 52%. Due to your continued sinus issues you had nasal surgery in October 2018. At your preoperative visits, it is noted that you denied chest pain, shortness of breath and any other cardiac symptoms. Other notes reviewed refer to sleep apnea where things are going well and various medication adjustments for arthritis. Based on this information, Dr. Strizik determined that you would be restricted from performing a heavy exertional occupation. He then provided the following permanent restrictions and limitations:
> - Unrestricted sitting, standing, walking or climbing
> - Frequently able to lift or carry up to 50 lbs and occasionally 75 lbs
> - Push or pull up to 100 lbs
> - Work 8 hours a day, 40 hours a week

## Summary of First Level of Appeal

On 02/01/2019, your client filed an appeal in response to our determination to terminate benefits. Our review of the medical documentation which included consultation with and/or review of a written report from a health care consultant, did not support restrictions and limitations that would render your client unable to perform the main duties of any gainful occupation beyond 01/13/2019. For complete details please refer to our letter dated 10/04/2019.

The letter noted in part, the following:

Cardiac testing in July 2018 for complaints of worsening shortness of breath without further description, was normal with the exception of an old area of possible damage, which likely is attributable to the distant history of heart attack. Records indicate your client also has sleep apnea on CPAP, for which he is compliant per the medical records. There have been no recent episodes of syncope, collapse or orthostatic hypotension documented.

There are co-morbid conditions including diabetes, which is well controlled with diet as evidenced by unremarkable and consistent hemoglobin A1c levels over three years and does not impact this review as there is no evidence of impairment from diabetes. Hypertension is well controlled on medications as evidenced by consistent and unremarkable blood pressure readings.

Although orthostatic hypotension is mentioned in the medical records, there is no evidence of this. One blood pressure medication is discontinued due to complaints of dizziness, not otherwise described, in July 2019. A restriction of no driving, as written by Dr. Siddiqui, is reasonable in any question of uncontrolled dizziness or syncope, however would not be completely impairing in all situations. Also, appropriate would be no work at heights, no ladder climbing, no working around dangerous machinery. Eye evaluation does not impact this review.

Your client was assessed for depression and/or anxiety; however, no impairment is found and your client declined treatment.

## Summary of Second Level of Appeal

On 03/25/2020, your client filed a second and final appeal in response to our determination to uphold our previous decision to terminate benefits. Additional information was submitted with your client's appeal, including but not limited to a list of VA appointments, medication history and radiology. We also received a Vocational Assessment and opinion sponsored by your office.

As part of your client's appeal review, all current and new medical information was reviewed by Robert Swotinsky, MD, a physician reviewer Board Certified in Occupational Medicine. For details of these medical records please refer to the medical review that was sent to you on 04/22/2020. The report was sent to you to afford you the opportunity for you or your client's treating physician(s) to respond or offer a rebuttal.

The findings of Dr. Swotinsky's medical review notes, in part:

The claimant is a 63-year-old former construction superintendent who applied for disability benefits in Fall 2016 after he had a TIA-like event. He has described longstanding symptoms of reflex (cough) syncompe that prevent him from driving, and because he can't drive, he can't work. An 3/16/20 report to Atty Webb by Robert White says the claimant also reports various physical incapacities. If the claimant has a medical condition that limits his overall capacity, it may be COPD. The treating providers sent to the insurer a complete set of PFTs from 04/05/16 that were normal and a report of PFTs from 05/15/19

that is incomplete. The complete PFT report including flow curves from 05/15/19 would provide the proper and more recent data to assess his pulmonary impairment, but that information has to date not been provided. Further, in-person examination of the claimant would not likely offer meaningful clarification because a health care provider cannot meaningfully examine a history of cough-related syncope, and because the missing COPD-related information is in the test report, not the physical exam.

So far, the available medical information support reflex (cough) syncope that support restriction from driving and other activities where a lapse in consciousness is likely to cause significant harm. This includes working at heights, and operating heavy machinery. Restricted from driving for at least one month after treatment with cough suppressive and no syncopal or near-syncopal events. In a non-safety sensitive environment, the claimant would have similar risk from syncope at work or outside of work. The file indicates he has reported syncopal and near-syncopal episodes since 2013, at work and outside of work, without associated accidents or injuries.

In response to the report, we received an email from your office requesting that a determination be made.

## Second Level Appeal Decision

We understand that your client has been diagnosed with Chronic Obstructive Pulmonary Disease (COPD), coronary artery disease, and recent syncope. However, our review of the medical documentation, which included consultation with and/or review of a written report from a health care consultant, does not support restrictions and limitations that would render your client unable to perform each of the main duties of any gainful occupation that your client has the training, education, and experience to perform beyond 01/13/2019.

The records note that Mr. Hitchcock describes his syncope as cough-onset and not vasovagal symptoms; however, his providers have not provided any type of cough suppressant to curb his coughing. It is also noted that Mr. Hitchcock has COPD and continued tobacco use. The 2016 PFTs were reported as normal and we have not been provided the PFT results from the 2019 testing. The records are absent any current ischemic heart disease and his hypertension is noted to be well-controlled. The records do not support restrictions or limitations from Type 2 diabetes, Gastroesophageal reflux disease, sinusitis or mood disorder. The medical reviews further note that Mr. Hitchcock is unrestricted from sitting, standing, walking or climbing, he can frequently lift/carry up to 50 pounds and occasionally 75 pounds. He has the ability to work 8 hours a day for 40 hours per week.

## Vocational

We reviewed your client's past training, education and work experience to evaluate your client's capacity to perform work-related activity. The documentation provided suggests your client is not limited from working in a sedentary work capacity. The definition of sedentary work capacity, as defined by the Department of Labor, is:

Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are only required occasionally (1-

33%) and if all other sedentary criteria are met.  Sedentary work may require exertion up to 10 lbs. occasionally and a negligible degree of exertion on a frequent (34-66%) or constant (67-100%) basis.

Using *The Dictionary of Occupational Titles* as a reference, we found that your client would be capable of performing the following sedentary occupations:

| DOT# | Occupation | Wage (mean) |
|---|---|---|
| 184.167-170 | Superintendent, Maintenance | $4409.17 per mo |
| 185.167-042 | Manager, Equipment Sales | $4854.17 per mos |
| 169.167-038 | Order Dept Supervisor | $4252.50 per mo |

The preceding list is just a sample of various jobs that your client shows transferable skills to perform.  The list is not all-inclusive and is only a sample of possibilities.  The jobs listed are found to exist within your client's area and are appropriate from the standpoint of adequate salary levels relative to your client's prior earnings.  NOTE: Current hiring or job availability is not a consideration when identifying occupational alternatives, only that the occupations identified exists within the local labor market.

We are aware that your client is qualified to receive other income benefits, such as Social Security Disability Income (SSDI). However, please understand our group policy and review process is independent from that of the Social Security Administration (SSA). Although benefits have been approved for SSDI, this decision was based on the SSA's plan provisions and information received by the SSA. The claim decision made under your client's Lincoln Financial Group policy was based upon information we have obtained from you, your client, your client's treating medical professionals and the results of any internal and/or independent reviews of your client's claim.

Review of the file indicates that your client was found to be disabled by the Social Security Administration. While we do not dispute the Social Security decision, our information is more recent. Review of this more recent information indicates the medical evidence does not support a Total Disability and produced a different decision. Therefore, we find you are no longer disabled as of 01/03/2019.

We evaluated this claim by applying the provisions of the policy to the facts and opinions contained in the claim file.  Other than what is set out in the policy, we did not rely upon any guidelines, internal rules, protocols, standards or other similar criteria in reaching this claim determination.

You and your client have exhausted all rights of appeal, and your client's administrative file is now closed.

If your client's plan is subject to ERISA, your client may have other voluntary alternative dispute resolution options, such as mediation.  One way to find out what may be available is to contact your client's local U.S. Department of Labor Office and your client's State insurance regulatory agency.  In addition, your client has the right to pursue litigation and your client may request copies of records and other information relevant to the claim free of charge.

The employer's plan has a contractual limitations period of three years, which means that a lawsuit must be brought within three years after the date written proof of claim or proof of

continued disability was required.  The date on which the contractual limitations period expires for this claim is 01/13/2022.

Please contact me directly at the number listed below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Lisa Kurtz, HIA
800-423-2765 *7616
Specialist, Claims
Appeals Department – Claims Solutions Shared Services
The Lincoln National Life Insurance Company



SOCIAL SECURITY ADMINISTRATION
**RETIREMENT, SURVIVORS, AND DISABILITY INSURANCE**

DATE: **October 26, 2018**

LAWRENCE GALE HITCHCOCK                        Claim Number: 
1210 RICHWOOD MOUNTAIN Dr,
DRASCO AR 72530

You must meet certain medical and non-medical requirements to be entitled to disability benefits.

We have found that you meet the medical requirements for disability benefits.

THE DECISION ON YOUR CASE

The following report(s) was/were used to decide this claim in addition to those listed on our previous notice.

SOUTHERN MEDICAL GROUP - BATESVILLE report received 04/16/2018
BAXTER REGIONAL MEDICAL CENTER report received 05/22/2018
BAXTER REGIONAL MEDICAL CENTER report received 09/06/2018

You said that you became disabled on 03/07/2013 because of heart problems and ethmoid disease. The medical evidence shows that while you may have been having problems at that time, your impairments were not severe enough to be considered disabling according to Social Security disability rules and regulations until 01/2018. Therefore, based on consideration of all available evidence, we have established that your disability began on 01/01/2018.

The determination on your claim was made by an agency of the State. It was not made by your own doctor or by other people or agencies writing reports about you. However, any evidence they gave us was used in making this determination. Doctors and other people in the State agency who are trained in disability evaluation reviewed the evidence and made the determination based on Social Security law and regulations.

We have not yet made a decision about whether you meet the non-medical requirements, but we will make that decision soon. Then we will send you a second notice explaining our decision. After you receive this second notice you will have 60 days to appeal the determination we made about your claim for disability benefits.

If you have any questions about your disability claim or wish to appeal our findings, please do not get in touch with the Social Security office until you have the second notice. The people at the Social Security office will be better able to answer your questions when they have the information from both notices.

After you have received your second notice, you can call or write any Social Security office to appeal our determination or to get answers to your questions. The office that services your area can be reached at:

XXX-XX<span>████</span>    HITCHCOCK, LAWRENCE GALE

701 AIRPORT LOOP ROAD
Searcy, AR 72143

(855) 686-1467

Most questions can be handled by telephone or mail. If you go to the Social Security office in person, please take both notices with you.

**Suspect Social Security Fraud?**

If you suspect Social Security fraud, please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline at 1-800-269-0271 (TTY 1-866-501-2101).

Social Security Administration

ABS124306/abs124306  0621                          A68
CC:     SEAN SULLIVAN

XXX-XX-          HITCHCOCK, LAWRENCE GALE